## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 18-CR-220-JB** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **NATHANIEL JOHNSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>DEFENDANT'S MOTION TO SUPPRESS EVIDENCE</u>

COMES NOW the Defendant Nathaniel Johnson, by and through his counsel of record Benjamin A. Gonzales, and pursuant to the Fourth, Fifth and Sixth Amendments of the United States Constitution and Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure – to respectfully submit this Motion to Suppress the evidence seized on January 5, 2018, as well as Mr. Johnson's subsequent custodial statements.   Mr. Johnson respectfully submits that the evidence seized from Mr. Johnson's black bag by Drug Enforcement Administration (DEA) Agent Jarrell (Jay) Perry on a Greyhound Bus must be suppressed because it was obtained without a warrant after an unauthorized seizure and search of the defendant's bag, or in the alternative, the evidence was obtained after a coerced and involuntary consent which ultimately led to the discovery of the evidence.   Mr. Johnson also seeks to suppress the involuntary

statements he made during a custodial interrogation because there was no temporal or causal break between his unlawful arrest and his subsequent interrogation.

## INTRODUCTION

1.      Defendant Nathaniel Johnson has been charged in an Indictment, returned on January 16, 2018, with possession of more than 500 grams of methamphetamine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).   (Doc. 11)

2.      On January 5, 2018, Mr. Johnson was traveling on an eastbound Greyhound Bus which stopped at the Greyhound/Amtrak station in Albuquerque, New Mexico for washing and re-fueling.   Reports do not document any of Agent Perry's efforts and inspection of the bus prior to passengers reboarding and thus it is unclear whether he examined passengers personal property prior to passengers reboarding.

3.      Multiple law enforcement task force officers (TFO) were on the bus prior to the Defendant reboarding.   At least one agent, TFO Chavez was near the front of the bus and Agent Perry was at the rear, both discreetly armed.   Both officers are of a large stature and can appear intimidating.

4.      After boarding the bus to continue his travel eastbound, Nathaniel Johnson sat down.   Mr. Johnson was able to hear interactions with passengers where Agent Perry stated that he was on the bus "for security".   Agent Perry was wearing an Amtrak Security hat.   It should be noted that Amtrak and Greyhound

operate in the same building.

5.      Agent Perry identified himself as a police officer and began speaking with Mr. Johnson asking about his travel details.   Agent Perry asked for the Defendant's ticket, continuing to ask questions.   Agent Perry then asked Mr. Johnson for permission to pat the Defendant down.   Agent Perry asked the Defendant to stand up.

6.      After completing the pat down, Agent Perry asked about a black bag that he was observing.   Mr. Johnson stated that the bag was his.   Agent Perry asked Mr. Johnson if he would grant permission for Agent Perry to search the bag for contraband.   Mr. Johnson did not give Agent Perry permission to search the bag but instead told Agent Perry "I'm showing you."   Mr. Johnson showed Agent Perry the contents of the bag, moving around dirty clothing.

7.      At one point Agent Perry said "what about this inside here?   Black bundle right there", seizing the bag, discovering narcotics and arresting Mr. Johnson immediately.

8.      Assistant United States Attorney Mark C. Pfizenmeyer, counsel of record for the United States, has been informed of this Motion to Suppress and Mr. Pfizenmeyer represents that the Government opposes the Motion.

## ARGUMENT

The Fourth Amendment protects people from unreasonable searches and seizures.   The touchstone of the Fourth Amendment is reasonableness and the

Amendment is violated whenever law enforcement officers invade an individual's reasonable expectation of privacy without a warrant or meaningfully interfere with an individual's possessory interest in his property. *Katz v. United States,* 389 U.S. 347, 37 (1967); *United States v. Hill,* 805 F.3d 935 (10th Cir. 2015).

The physical evidence in this case was seized without a warrant following an unreasonable seizure and search of the Defendant's luggage.   Certainly lacking probable cause or even reasonable suspicion, DEA Agent Perry seized and immediately searched the defendant's luggage based on little more than a hunch that there were narcotics in the bag, a bulge in clothing which made Agent Perry suspicious and without a search warrant.   The resulting seizure of the evidence was the tainted fruit of this constitutional violation.

The alleged consent given was involuntary, due to the coercive methods used by Agent Perry and the other officer.   The agents used subtle as well as phsycially intimidating methods to coerce the Defendant to involuntarily consent to various searches of his person and property.   *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973); *United States v. Harrison*, 639 F.39 F.3d 1273 (10th Cir. 2011). Lastly, the coerced and involuntary consent given was limited in scope and Agent Perry expanded that scope by searching the Defendant's bag further than Mr. Johnson displayed it.   *United States v. Anderson*, 114 F.3d 1059 (10th Cir. 1997).

Additionally, the involuntary statements Mr. Johnson made during a custodial interrogation should be suppressed because there was no temporal or

causal break between his arrest and his subsequent interrogation.   *Brown v. Illinois*, 422 U.S. 590, 602 (1975).   *Wong Sun v. United States*, 371 U.S. 471 (1963).

## I.   AGENT PERRY SEARCHED PASSENGER JOHNSON'S LUGGAGE WITHOUT PROBABLE CAUSE OR A SEARCH WARRANT IN VIOLATION OF THE FOURTH AMENDMENT

The Fourth Amendment protects "the right of the people to be secure in their . . . effects against unreasonable . . . seizures."   A traveler's luggage is one of the many "effects" protected by the Fourth Amendment.   *United States v. Hill,* 805 F.3d 935, 937 (10th Cir. 2015).   A warrantless seizure proscribed by the Fourth Amendment occurs whenever there is some meaningful interference with an individual's possessory interest in his property. *Id*.

The DEA Agent violated the Fourth Amendment by seizing the luggage of the Defendant without a warrant and based only on a suspicion, seeing a black bulge.   Immediately after merely seeing this bulge, Agent Perry arrested the Defendant and conducted a warrantless search of the Defendant's luggage finding illegal narcotics.   Mr. Johnson was only arrested and charged based on Agent Perry's hunch that the black bulge was illegal narcotics.

The drug evidence against Mr. Johnson was the fruit of an illegal seizure and almost immediate subsequent search without a warrant which lacked any reasonable suspicion or probable cause.   Consequently, Mr. Johnson respectfully submits that the evidence seized must be suppressed.

## A.    Unreasonable Seizure and Search of Luggage.

A Fourth Amendment seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in their property." *United States v. Jacobsen,* 466 U.S. 109, 113 (1984).   The exertion of dominion and control over private property by a law enforcement officer for his own purpose amounts to a seizure.   *Id.* at 120, fn. 18.   Such a seizure is only justified if agents have probable cause to believe the item contains contraband. *Id.*

Moreover, an individual has a reasonable expectation of privacy in the contents of his luggage.   *United States v. Nicholson,* 144 F.3d 632, 637 (10th Cir. 1998.)   Of course, not every invasive investigation of a traveler's bag contravenes the Fourth Amendment: for example, a visual inspection, a dog sniff, or a passing smell of a suitcase do not violate the Fourth Amendment because these acts do not impinge on any legitimate expectation of privacy.   However, if a law enforcement officer lifts the defendant's checked luggage, or otherwise tries to assess the weight of the item, or manipulates the bag to discern its contents, then the defendant has been subjected to an unconstitutional search because that is simply not the type of inquiry which the traveling public expects when they entrust their luggage to a contract carrier.   *Id.* at 637.

Agent Perry conducted an unreasonable search and seizure of the Defendant's black bag.   Just prior to the arrest, Agent Perry allegedly saw a black

bundle.   Counsel believes that Agent Perry only saw a bulge and that he could not have clearly seen anything incriminating.   Counsel alerts the Court to photographs taken when Mr. Johnson was arrested by law enforcement officers, including the Defendant's bag and its contents displayed in this motion. Although a bulge may be seen, it is not clearly a bundle.



Counsel believes at the time he looked into the Defendant's bag, while the Defendant moved around dirty clothes, Agent Perry could not definitively believe that what he saw was narcotics.



Also, Agent Perry misidentified the object as a black bundle.   The narcotics were wrapped in aluminum foil.



The inaccuracy of Agent Perry's description outlines his only slight recognition of an object that could have been a pair of socks, dirty underwear or

various other objects that are not obviously illegal.

In similar interdiction cases, agents obtained a warrant to search an individual's property.   In *United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008), Agent Perry located a suspicious individual traveling with boots that were packed with narcotics.   Agent Perry obtained permission to look at the boots noted strange glue marks, a very heavy weight, an obvious bulge and other factors. Agent Perry asked to cut into the boots and was not given permission, but did obtain permission to allow a dog sniff.   The drug dog indicated an odor of narcotics but could not locate the orgin.   Agent Perry seized the boots and obtained a search warrant.   Munoz-Nava was then handcuffed, not arrested but not free to leave.   The court found under these circumstances there was probable cause.   *Id* at 1144.   "While insufficient to establish probable cause, [the behavior exhibited by the narcotics dog] was a factor to consider in the totality of the circumstances." *Id* at 1144.

In the case at hand, Agent Perry did not use the opportunity to obtain a drug dog to sniff the bag.   Nor did he request that the Defendant allow him to search inside the bag himself.    At the very least, Agent Perry could have seized the evidence and later obtained a search warrant.   When an officer has reasonable suspicion to believe that an individual may possess contraband, the law allows the officer to temporarily detain the property while endeavoring to confirm or to dispel the suspicion. *See United States v. Place,* 462 U.S. 696, 702–06, 103 S.Ct.

2637, 77 L.Ed.2d 110 (1983)( "[W]e conclude that when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of *Terry* and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion [.]") *Citing from United States v. McKenzie*, No. 08-CR-1669 JB, 2010 WL 1795173, at *22 (D.N.M. Apr. 13, 2010), aff'd, 532 F. App'x 793 (10th Cir. 2013).

In *Arkansas v. Sanders*, 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979) the Supreme Court held when luggage comes under the exclusive custody of the police, it may not be searched without a warrant, absent information indicating the most pressing exigency.

Mr. Johnson respectfully submits that all of the evidence seized immediately after this unreasonable seizure and subsequent search without probable cause must be suppressed, because after seizing the bag the Agent continued to search the bag without probable cause and a search warrant.   No exigent circumstances existed to justify the warrantless search and seizure.

## II.    MR. JOHNSON'S ALLEGED CONSENT WAS INVOLUNTARY AND COERCED

A search subject to consent is permitted under the constitution.   "Voluntary consent" consists of two parts: (1) the law enforcement officers must receive either express or implied consent, and (2) that consent must be freely and voluntarily

given." *United States v. Jones,* 701 F.3d 1300, 1317 (10th Cir. 2012).

In determining the voluntariness of consent, the Fourth Amendment requires that "consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion is applied, the resulting consent would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed." *Schneckloth v. Bustamonte,* 412 U.S. 218, 228 (1973). The government bears "the burden of proving that consent is given freely and voluntarily." *Jones,* 701 F.3d at 1318 (citation omitted). "Further, the question whether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Id.*

In *United States v. Drayton*, 536 U.S. 194 (2002), the Court noted that the officer "did not inform the respondents of their right to refuse the search, he did request permission to search, and the totality of the circumstances indicates that their consent was voluntary, so the searches were reasonable." *Id.* at 207. The Court rejected not only the notion that "police officers must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search," but also the suggestion that "a presumption of invalidity attaches if a citizen consented without explicit notification that he or she was free to refuse to cooperate." *Id.*

In *Florida v. Bostick,* 501 U.S. 429 (1991), the Court deemed the following

factors relevant to the Fourth Amendment reasonableness determination: (1)

whether the agent advised the defendant he had the right to refuse consent, (2)

whether the agent in any way threatened the defendant (*i.e.,* the display of a

weapon and/or the nature of the questioning), and (3) the particular location of the

encounter.   *Bostick*, 501 U.S. at 437.   Following *Bostick,* the Tenth Circuit

similarly identified various factors relevant to whether a reasonable person would

not feel free to terminate an encounter with police:

> The threatening presence of several officers; the brandishing of a
> weapon by an officer; some physical touching by an officer; use
> of aggressive language or tone of voice indicating that
> compliance with an officer's request is compulsory; prolonged
> retention of a person's personal effects such as identification and
> plane or bus tickets; a request to accompany the officer to the
> station; interaction in a nonpublic place or a small, enclosed
> place; and absence of other members of the public.

*United States v. Hill,* 199 F.3d 1143, 1147–48 (10th Cir. 1999).

These factors are not exhaustive.   *See United States v. Hernandez*, 847 F.3d

1257, 1264 (10th Cir. 2017); *Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005).

Courts "'must consider all the circumstances surrounding the encounter' to

determine whether consent was voluntary." *United States v. Ledesma*, 447 F.3d

1307, 1314 (10th Cir. 2006) (quoting *Bostick*, 501 U.S. at 439). "A defendant's

subjective state of mind may be relevant to some degree on the issue of the

voluntariness of his or her consent, but it is not determinative if it does not

overcome other indicia that the defendant's consent was freely and voluntarily

given." *United States . v. Huerta-Rodriguez*, 2010 WL 4929044, at *10 (D.N.M. Oct. 20, 2010)(citing *Hill*).

In this matter, there are numerous factors leading counsel to believe that Mr. Johnson did not feel free to leave.   Agent Perry never informed the Defendant that he was free to refuse the encounter.   Agent Perry stated that he is on the bus for "security" purposes.   Agents were already on the bus at the time passengers began reboarding.   The TFO at the front of the bus was watching intently Mr. Johnson's encounter with Agent Perry.   This may lead the passengers to believe that Agents were working in a capacity similar to Transportation Security Administration (TSA) Agents and compliance is required to travel.   Agent Perry has been seen wearing Greyhound and Amtrak hats while engaging in his interdiction work.   In fact, on the date of this encounter with the Defendant, Agent Perry was wearing an Amtrak security staff hat shown in the photo below from the video recorded interrogation of Mr. Johnson.



On other occasions, Agent Perry is seen wearing a greyhound hat.   In fact, the photo below was captured from an interrogation in *United States v. Lawanda*

*Dodd-Gomez*, 18-CR-457-JH, an Amtrak interdiction case.



Counsel believes that this is an attempt to confuse passengers and assert authority.   SA Perry's pattern of introducing himself as a police officer who is checking the bus "for security" may mislead so called reasonable passengers into believing they are not free to decline or terminate the encounter. *See United States v. Grobstein*, 1:13-CR-0063-MV, Doc. 129, 2016 WL 10587954, at *24 (D.N.M. Mar. 7, 2016) (Vázquez, J.) (finding that "by identifying himself as a police officer, rather than as a DEA officer, and by representing that he is there for security purposes, without clarifying that his purpose is drug interdiction, SA Perry misled and misinformed Defendant. The Court is troubled by SA Perry's obfuscation of his position and his role.").   In *U.S. v. Harrison*, 639 F.3d 1273, 1278-79 (10th Cir. 2011), the Tenth Circuit held that "when government agents seek an individual's cooperation with a government investigation by misrepresenting the nature of that investigation, this deception is appropriately considered as part of the totality of circumstances in determining whether consent

was gained by coercion or duress."   By being vague as to his purpose, SA Perry

deprives passengers of an opportunity to understand the situation, let alone

exercise their right to decline consent.

In his report, Agent Perry indicates that he never blocked Mr. Johnson's

egress.   Counsel disagrees that this is true.   The Greyhound bus is a very

confined area.   *See Exhibits A and B – Diagrams of Bus* attached to this motion.

*See also below a photograph taken from the rear of the Greyhound bus.   A staff*

*member is seated where the Defendant likely sat.*



In order for the Defendant to stand up, presumably to be patted down, he

would need to move out from his seat.   The attached diagram, Exhibit B, shows

that the distance from the floor to the bottom of the overhead compartment is only 61 inches, five feet and one inch.   The overhead compartment juts out into the aisle way.

In order to continue to speak with the Defendant and pat him down, Agent Perry would have needed to stand in the Defendant's path of egress from his seat. During the visual inspection of the black bag, Agent Perry would have had to block the Defendant's egress.   The Defendant would have had to physically touch Agent Perry to exit his seat and cease the encounter.   The diagrams and photographs show how cramped this space really is.   The Defendant could not stand straight up from his seat without having to duck.   The leg area between seats is roughly 15 inches and the width of the aisle is roughly 14 inches.



Especially considering these close confines, there are specific and physical characteristics that would lead Mr. Johnson to feel he was not free to leave.

Agent Perry is a large muscular man.   At the time of his encounter with Mr. Johnson, he was standing over him, patting him down and ordering him about. Another intimidating individual, the TFO, was standing at the front of the bus intently observing their interactions.

Agent Perry is white and Mr. Johnson is black.   In *United States. v. Easley,* (D.N.M 16-CR-01089-MV) the court found that it must consider race in weighing the totality of the circumstances as to whether someone would feel free to leave, in order to ensure that Fourth Amendment protections apply equally to people of color.

By the time the Defendant was patted down by Agent Perry, his egress was most definitely hindered.   An agent posted at the front of the bus, partially blocking the exit, added to the conclusion that he had been seized.   Both the pat down and agent's placement and presence led the Defendant to feel like he could not decline the encounter.   "An encounter between an officer and a citizen must involve the use of physical force or show of authority on the part of the officer such that a reasonable person would not feel free to decline the officer's requests or terminate the encounter."   *Florida v. Bostick,* 501 U.S. at 439 (1991)   A reasonable person, and in particular an African American person, would not have felt comfortable to walk off the bus, past two law enforcement officers who are large in physical build and surely armed.

### III.   MR. JOHNSON LIMITED THE SCOPE OF ANY SEARCH

Should the court find that the Defendant's alleged consent was voluntary and not coerced, counsel believes that the scope of this search was limited by the Defendant, limiting the search to merely a visual inspection by the Agent, and did not permit Agent Perry to conduct a physical search of the bag himself.

Defendant Johnson was specific that he did not want Agent Perry to rummage through his bag.   Agent Perry's report states that Defendant Johnson stated "I'm doing it" indicating his limitation on the search requested by Agent Perry.

In *United States v. Anderson*, 114 F.3d 1059 (10th Cir. 1997), the Tenth Circuit stated that "the scope of a search is generally defined by its expressed object, and is limited by the breadth of the consent given." The objective reasonable person test is utilized to determine what a typical person would have understood between the officer and the consenting person. *Id*. (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)).

Any limitation on the extent of a consent to search must come from the person consenting, and not from law enforcement. *See United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999) ("We consistently and repeatedly have held a defendant's failure to limit the scope of a general authorization to search …is an indication the search was within the scope of the consent."); *Florida v. Jimeno*, 500 U.S. at 251 (defendant gave officer consent to search and did not place any

explicit limitation on the scope of the search). The scope of a consent to search is

determined by the totality of the circumstances. *United States v. Patten*, 183 F.3d

1190, 1194 (10th Cir. 1999). Mr. Johnson limited the extent of the search by only

moving things around inside the bag himself, and never permitting Agent Perry to

examine the bag physically.

## IV.   MR. JOHNSON'S CUSTODIAL STATEMENTS SHOULD BE SUPPRESSED AFTER AN ILLEGAL SEARCH

Mr. Johnson moves the Court to also suppress the statements that he gave

after his arrest. Whether evidence obtained following a Fourth Amendment

violation must be suppressed depends on whether the evidence "has been come at

by exploitation of [the] illegality or instead by means sufficiently distinguishable

to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488

(1963) (quoting Maguire, *Evidence of Guilt*, 221 (1959)). For example, to break

the causal chain between the violation and an accused's subsequent statement, it is

not enough "that the statement meet the Fifth Amendment standard of

voluntariness but that it 'be sufficiently an act of free will to purge the primary

taint.'" *Brown v. Illinois*, 422 U.S. 590, 602 (1975) (quoting *Wong Sun*, 371 U.S.

at 486); *see also Taylor v. Alabama*, 457 U.S. 687, 690 (1982) (Miranda warnings

not enough to purge the taint of an unlawful search and seizure). A statement's

voluntariness alone is not sufficient to dispel the effects of the illegal search or

seizure because that voluntariness only speaks to Fifth Amendment concerns and

does not address the distinct policies and interests of the Fourth Amendment.
*Brown*, 422 U.S. at 600-603; *United States v. Melendez-Garcia*, 28 F.3d 1046,
1053-1055 (10th Cir. 1994).

For that reason, to avoid suppression of evidence—including
statements—obtained pursuant to a consent to search following an illegal arrest or
detention (in violation of the Fourth Amendment) the government must prove *both*
(1) that the consent was voluntary in fact *and* (2) that there was a break in the
causal connection between the illegal detention and the consent. *United States v.
Carter*, 360 F.3d 1235, 1243 (10th Cir. 2004); *United States v. McSwain*, 29 F.3d
558, 562, n. 2 (10th Cir. 1994); *Melendez-Garcia*, 28 F.3d at 1053-1055; *United
States v. Fernandez*, 18 F.3d 874, 882, n. 7. Whether or not the accused's consent
to search (or speak) was voluntary, the government still must prove the consent
was sufficiently attenuated from the illegal detention or arrest to purge the
illegality's taint. That burden is a "heavy" one. *United States v. Caro*, 248 F.3d
1240, 1247 (10th Cir. 2001); *United States v. Gregory*, 79 F.3d 973, 979 (10th Cir.
1996).

In the present case, Mr. Johnson's coerced consent or the illegal search of
his bag directly led to his arrest, which in turn resulted in his transport to the DEA
offices and subsequent interrogation by agents. From the moment of his arrest
through his statement and until his eventual booking in jail, Mr. Johnson remained
in the custody of the DEA. As such, the government will not be able to show

sufficient attenuation between the unlawful arrest and the subsequent statements.
First, very little time elapsed between Mr. Johnson's arrest and his later
statements. Second, there were no intervening circumstances that broke the causal
chain between the illegal seizure of Mr. Johnson's bag, his alleged consent and
resulting arrest, and his statements later provided to agents.

WHEREFORE, for all of the foregoing reasons, the Defendant Nathaniel
Johnson respectfully requests that this Honorable Court suppress all of the
evidence seized by DEA Special Agent Jarrell Perry on January 5, 2018 as well as
Mr. Johnson's involuntary statements.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

 /s/            *filed electronically*
BENJAMIN A. GONZALES, AFPD
Attorney for Defendant