**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                          No. CR 18-0220 JB

NATHANIEL DONALD JOHNSON,

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to the Presentence Investigation Report, filed August 3, 2020 (Doc. 108)("Objections"). The primary issues are: (i) whether Defendant Nathaniel Johnson's 1997 conviction for assault with intent to murder, committed when he was seventeen years old, should (a) count towards his criminal history score, and (b) act as a predicate for designating Johnson as a career offender; (ii) whether Johnson's 2008 and 2013 Michigan drug distribution convictions qualify as controlled substance offenses under § 4B1.2 of the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines"); (iii) whether Johnson's 2008 attempt conviction is a controlled substance offense; and (iv) whether Johnson's 2013 conviction for possession with intent to deliver marijuana is a controlled substance offense, where Michigan law at the time of Johnson's offense criminalizes hemp distribution, but the current Controlled Substances Act, 21 U.S.C. § 802(6) ("CSA"), does not. The Court concludes that: (i) Johnson's conviction for assault with intent to murder counts towards his criminal history score and acts as a predicate for designating Johnson as a career offender, because, although Johnson was seventeen years old at the time of the offense, he was convicted as an adult; (ii) Johnson's Michigan drug distribution convictions qualify as controlled substance offenses, because the state statute at issue is a categorical match with the U.S.S.G.; (iii) Johnson's attempt conviction is a controlled substance offense, because Application Note 1 to U.S.S.G. § 4B1.2 explains that attempt convictions qualify as controlled substance offenses; and (iv) Johnson's conviction for possession with intent to deliver marijuana is a controlled substance offense, because the state and federal laws at issue (a) were a categorical match at the time of the offense and conviction; and (b) are a categorical match currently. The Court, therefore, overrules Johnson's Objections.

**FINDINGS OF FACT**

The Court takes its facts from the Plea Agreement, filed April 2, 2020 (Doc. 91)("Plea Agreement"), the Sentencing Memorandum by Nathaniel Donald Johnson, filed September 29, 2020 (Doc. 119), and the Presentence Investigation Report, filed June 1, 2020 (Doc. 95)("PSR").

Johnson's first conviction occurred in state court 1997, when he was seventeen years old. See PSR ¶ 27, at 5.  Johnson "assaulted the victims" "with a pistol" "with intent to commit murder." PSR ¶ 27, at 5.  Johnson committed the assault in "response to violent threats from [a] gang member" at age seventeen.  Johnson Memo at 1-2.  In 1998, Johnson was sentenced to nine to twenty-two years in custody for the assault.  See PSR ¶ 27, at 5.  Johnson was released on parole for the assault conviction on September 21, 2005.  See PSR ¶ 27, at 5.  Although Johnson earned his General Educational Development ("GED") while in custody for the 1997 conviction and continued his education upon release, he had difficulty obtaining a job and struggled financially. See Johnson Memo at 2.

Subsequently, Johnson was arrested in April, 2006, for trespass in Ann, Missouri, and was sentenced to five days in custody.  See PSR ¶ 28, at 6.  In December, 2007, Johnson was convicted of attempted possession with intent to distribute heroin.  See PSR ¶ 29, at 6.  He was released on parole on September 9, 2011.  See PSR ¶ 29, at 6.  Then, on May 23, 2012, Johnson committed "controlled substance/delivery/manufacture marijuana" in Detroit, Michigan.  PSR ¶ 30, at 6.  On October 10, 2013, he received a sentence of six months in custody, with two years' probation.  See PSR ¶ 30, at 6.  He was released on probation, but during probation he "violated his terms of probation and was ordered to attend anger management classes" in 2015.  PSR ¶ 30, at 7.

During his time on probation, Johnson cared for his aging parents, who are now deceased. See Johnson Memo at 2.  His mother died of cancer in 2013, which was "especially hard on him because she had been a key source of support throughout his life." Johnson Memo at 2.  After his mother's death, Johnson moved in with his father, who struggled with heroin addiction.  See Johnson Memo at 2.  Johnson made multiple unsuccessful attempts to stop his father from using heroin.  See Johnson Memo at 3-4.  His father ultimately passed away, and Johnson moved to Arizona, where he continued to struggle financially.  See Johnson Memo at 4.  On May 23, 2017, sometime after his father's death, Johnson smoked marijuana on a bus in Vinita, Oklahoma.  See PSR ¶ 31, at 7.  Police searched Johnson's bag, and located a firearm and two containers of

marijuana.  See PSR ¶ 31, at 7.  Johnson was sentenced to "fifteen years custody, all suspended," and "two years probation."  PSR ¶ 31, at 7.

Also in 2017, Johnson began a relationship with Kiarra Height, which was "a source of pride and happiness for him, especially given the contrast with his previous marriage."  Johnson Memo at 4.  Johnson planned to have a family with Height, and they hoped to buy a trailer.  See Johnson Memo at 4.  Consequently, "[w]hen Mr. Johnson received a call from an acquaintance offering an opportunity to earn a few hundred dollars to transport drugs," Johnson decided to accept the offer to save money for a deposit on the trailer.  Johnson Memo at 4.

On January 5, 2018, Johnson, aged thirty-seven, was travelling on a Greyhound bus from Phoenix, Arizona, to Joplin, Missouri, with a backpack.  See PSR ¶ 8 at 3; Plea Agreement at 4. The bus had a layover in Albuquerque, New Mexico.  See PSR ¶ 8 at 3.  Johnson got off the bus during the stop, then re-boarded the bus, and took his seat.  See Plea Agreement at 4.  A Drug Enforcement Administration ("DEA") agent approached Johnson.  See PSR ¶ 8 at 3; Plea Agreement at 4.  After denying initially that he had any luggage with him, Johnson allowed the agent to search his backpack.  See PSR ¶ 8 at 3; Plea Agreement at 4.  The agent found two bundles of methamphetamine, amounting to 875 grams in total.  See PSR ¶ 9 at 3; Plea Agreement at 4. Johnson's crime "was motivated by financial hardship and the expected benefit to him was extremely limited."  Johnson Memo at 1.  Specifically, Johnson expected to transport under two pounds of methamphetamine for under $500.00.  See Johnson Memo at 1; PSR ¶ 10 at 4 (explaining that Johnson was transporting the bag from Arizona to Phoenix because he was "expecting to be paid $500 upon delivery of the contents").  Johnson pled guilty to "Possession with Intent to Distribute 500 Grams and More of a Mixture or Substance Containing Methamphetamine" under 21 U.S.C § 841(a)(1); § 841(b)(1)(A).  PSR ¶ 3, at 3.  There "is nothing in this case or his criminal history to suggest that Mr. Johnson is a serious drug trafficker."  Johnson Memo at 5.  Moreover, Johnson has not been convicted of any violent offenses since age seventeen. See Johnson Memo at 4.

## PROCEDURAL BACKGROUND

The United States Probation offices ("USPO") filed the PSR on June 1, 2020.  See PSR at 1.  The PSR states that Johnson "is a career offender, therefore, the criminal history category is VI."  PSR ¶ 34, at 7 (citing U.S.S.G. § 4B1.1(b)).  The PSR explains that Johnson "has at least two

prior felony convictions of either a crime of violence or a controlled substance offense; therefore, he is classified as a Career Offender." PSR ¶ 11, at 16. Johnson filed Objections in response to the PSR. See Objections at 1.

### 1.   The Objections.

In his Objections, Johnson disputes several conclusions in the PSR. See Objections at 1-8. First, Johnson argues that his conviction for "assault excluding sexual (assault with intent to murder)" and "felony firearm," PSR ¶ 27, at 5, should not be counted, because he was seventeen years old when he committed the offense, see Objections at 1. Johnson argues that this conviction should only be counted "if he was released from custody within five years of the commencement of the instant offense." Objections at 1 (citing U.S.S.G. §§ 4A1.2(e)(3)-(4); 4A1.2(d)(2)). Johnson notes that he was released from prison for the assault charges in 2011, and that the present offense occurred in 2018. See Objections at 2. Johnson maintains, therefore, that his assault conviction should "not be counted for purposes of criminal history and cannot be a predicate for a career offender designation." Objections at 2.

Next, Johnson argues that his Michigan drug distribution convictions do not qualify as a "'controlled substance offense'" under the U.S.S.G. Objections at 3 (quoting United States v. McKibbon, 878 F.3d 967, 971 (10th Cir. 2017)). The relevant provision states:

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2. Johnson asks the Court to apply a categorical analysis, and determine that, because Michigan's "statute of conviction encompasses a broader range of conduct than the conduct described in section 4B1.2(b), then the state conviction does not meet the Guidelines' definition and is not a categorical match." Objections at 3. Johnson notes that he was convicted in Michigan under Mich. Comp. Laws Ann. § 333.7401(2)(d)(iii) on two separate occasions. See Objections at 3. The first incident involved heroin, and the second incident involved marijuana. See Objections at 3. The state law at issue makes it a crime to "'manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance . . . .'" Objections at 4 (quoting Mich. Comp. Laws § 333.7401). Johnson argues that his convictions under Michigan

- 4 -

law "fall outside the definition of controlled substance offense" in the U.S.S.G., and, therefore, "those convictions cannot be career offender predicates." Objections at 4.

Likewise, Johnson argues that his attempt convictions, see PSR ¶¶ 29-30, at 6, are outside the scope of the U.S.S.G.'s controlled substance offense definition, see Objections at 4. Johnson contends that U.S.S.G. § 4B1.2(b)'s commentary "impermissibly expands the substantive definition in the Guidelines." Objections at 4. Johnson also notes that the United States Court of Appeals for the Sixth Circuit and the United States Court of Appeals for the District of Columbia Circuit have held "that the commentary's inclusion of attempt crimes within the definition of 'controlled substance offense' is an impermissible addition to, rather than interpretation of, the guideline." Objections at 4-5 (citing United States v. Havis, 927 F.3d 382, 387 (6th Cir. 2019); United States v. Winstead, 890 F.3d 1082, 1091 (D.C. Cir. 2018)). Johnson concludes that, because U.S.S.G. § 4B1.2(b)'s text does not "include attempt crimes in the definition of controlled substance offense, those convictions cannot serve as a career offender predicate." Objections at 5.

Last, Johnson contends that his conviction for Possession with Intent to Deliver Marijuana, see PSR ¶ 30, at 6, is not a controlled substance offense under U.S.S.G. § 4B1.2(b), because Michigan law at the time of his conviction criminalized hemp distribution, and the CSA, 21 U.S.C. § 802(6), does not, see Objections at 6. Johnson notes that, in a related case in the United States Court of Appeals for the Tenth Circuit, see United States v. Cantu, 964 F.3d 924, 932 (10th Cir. 2020), the Tenth Circuit held that a similar state drug statute was "overbroad because it covered substances not within the federal Controlled Substances Act." Objections at 6-7. Similarly, here, Johnson insists that the Michigan statute governing his conviction is "overbroad and cannot serve as the predicate for a career offender designation." Objections at 8.

2.    **The United States' Sentencing Memorandum and Response to the Defendants' PSR Objections.**

The United States responds to the Objections, and asks the Court to sentence Johnson to 263 months imprisonment, and five years of supervised release. See United States Sentencing Memorandum and Response to the Defendants' PSR Objections at 1, filed August 17, 2020 (Doc. 110)("Sentencing Memo"). First, the United States argues that Johnson's assault conviction is a qualifying offense under the career offender guideline, "because it is a 3 point offense that occurred within 15 years of committing the current offense." Sentencing Memo at 1. The United States

- 5 -

insists that a 3-point offense "is included in the career offender determination so long as it occurred within 15 years of the defendant's release from prison, regardless of whether the defendant was under the age of 18 at the time of the offense." Sentencing Memo at 8. The United States also acknowledges that the Michigan State statutory definitions of the offenses giving rise to Johnson's heroin and marijuana convictions do not match exactly the U.S.S.G.'s controlled substance offense definition. See Sentencing Memo at 10. The United States argues, however, that because the differing terms "are all synonyms," Johnson's heroin and marijuana convictions "clearly fall within the scope of the Guidelines' definition of a controlled substance offense." Sentencing Memo at 10-11.

Next, the United States discusses United States v. Chavez, 660 F.3d 1215, 1228 (10th Cir. 2011)("Chavez"). See Sentencing Memo at 11. The United States argues that, under Chavez, Johnson's heroin and marijuana convictions are controlled substance offenses, because "attempts are included in the Guidelines' definition of a controlled substance offense." Sentencing Memo at 11 (citing Babcock v. United States, No. 2:18-CV-819 TS, 2020 WL 30345, at *16-17 (D. Utah Jan. 2, 2020)(Stewart, J.)). Next, the United States suggests that the Court should "use" CSA's "definition of a controlled substance in making its career offender determination." Sentencing Memo at 12-13. The United States notes that the Michigan statute under which Johnson was convicted had the same definition of marijuana as the CSA at the time of the offense. See Sentencing Memo at 13. The United States insists that, after Johnson committed the offense, Congress amended the CSA definition to exclude hemp. See Sentencing Memo at 13 (citing 21 U.S.C. § 802(16)(B)). The United States explains:

> [I]f the Court decides to use the CSA definition in effect when Johnson committed the current offense, then there is a categorical match and the conviction qualifies under the career offender guideline. But if the Court decides to use the CSA definition in effect on the day of sentencing, then there is no categorical match because he could have been convicted of possessing hemp. Thus, the question before the Court is whether to apply the CSA definition of a controlled substance in effect at the time Johnson committed the instant offense or to apply the post-December 20, 2018 definition.

Sentencing Memo at 14 (citing United States v. House, No. CR 19-96-BLG-SPW, 2020 U.S. Dist. LEXIS 139981 *7-11 (D. Mont. Aug. 5, 2020)(Waters, J.)). The United States asserts that, because this issue is one of first impression, the Court must apply "'the traditional tools of statutory construction.'" Sentencing Memo at 15 (quoting FAA v. Cooper, 566 U.S. 284, 305 (2012)). The

United States also notes that the legislative history supports its interpretation of marijuana's definition.  See Sentencing Memo at 17 (citing the Agricultural Improvement Act of 2018, P.L. 115-334, Title XII, § 12619(a) ("AIA")).  The United States notes that Congress amended the AIA to allow farmers to produce hemp and not "to provide relief to criminals."  Sentencing Memo at 18.  Consequently, the United States concludes that "the CSA definition of marijuana at the time of the instant offense is a categorical match for Johnson's 2013 marijuana conviction," see PSR ¶ 30, at 6-7, "and that conviction is a qualifying offense,"  Sentencing Memo at 18-19.

Last, the United States provides its sentencing recommendation.  See Sentencing Memo at 19 (citing 18 U.S.C. § 3553(a)).  The United States acknowledges that, although Johnson's first conviction was a serious assault, it occurred over twenty years ago when Johnson was seventeen years old.  See Sentencing Memo at 19.  Moreover, according to the United States, "his intervening convictions appear to have been relatively minor offenses, including one for marijuana."  Sentencing Memo at 19.  Accordingly, the United States notes that, although "Johnson's criminal history and this conviction warrant a significant sentence, they also give pause to the conclusion that an appropriate sentence is 22 years or more."  Sentencing Memo at 19-20.  Still, the United States observes that Johnson was convicted in 2017 "for having a gun and drugs on a bus -- a strikingly similar offense to the one here."  Sentencing Memo at 20.  In that case, the Craig County District Court in Vinita, Oklahoma, suspended Johnson's fifteen-year sentence.  See Sentencing Memo at 20.  The United States argues that Johnson's suspended sentence "was a gift and it should have been very clear to Johnson that if he ever got caught again, the punishment would be significant."  Sentencing Memo at 20.  The United States therefore contends that Johnson "quickly threw away his second chance" and thus should receive a sentence at "the low end of the guideline."  Sentencing Memo at 20.  The United States also suggests that, "if the Court feels Johnson's sentence is too strong given the other factors," then the Court should "vary downward no more than three levels."  Sentencing Memo at 20.

### 3.    The PSR Addendum.

The USPO responds to the Objections and rejects all of Johnson's arguments.  See Addendum to the PSR at 1-3, filed August 18, 2020 (Doc. 111)("PSR Addendum").  First, the USPO explains that Johnson's assault conviction qualifies as an adult conviction, although he was seventeen when he committed the offense, because "he was charged and convicted in an adult state

court (rather than a juvenile court)." PSR Addendum at 1. Moreover, the USPO contends that, because Johnson was released in 2011 from custody for the assault charges, and committed the offense at issue in 2018, the "time frame is within the 15 years requirement," and therefore "the application of U.S.S.G. § 4A1.1(a) and U.S.S.G. § 4B1.1 will remain unchanged at this time." PSR Addendum at 2.

Second, the USPO addresses Johnson's argument that Michigan's drug distribution statute criminalizes conduct beyond the U.S.S.G's definition of "controlled substance offense." PSR Addendum at 2 (citing U.S.S.G. § 4B1.2(b)). The USPO maintains that "deliver" in the Michigan statute "plainly falls within the meaning of 'distribute'" in the U.S.S.G. PSR Addendum at 2 (no citation for quotation). Further, the USPO notes that the U.S.S.G. "make clear controlled substance offenses include attempts to commit a controlled substance offense." PSR Addendum at 3. The USPO, therefore, declines to change Johnson's designation as a Career Offender. See PSR Addendum at 3.

### 4.    **Johnson's Sentencing Memorandum.**

Johnson submits a Sentencing Memorandum urging the Court to sentence him to 120 months imprisonment. See Johnson Memo at 1. Johnson insists that his sentence under the U.S.S.G. is "dramatically at odds with the seriousness of his offense and his criminal history." Johnson Memo at 1. He maintains that a ten-year sentence "would be sufficient punishment . . . in this case, and any longer sentence would be longer than necessary." Johnson Memo at 5.

### 5.    **The Hearing.**

The Court held a hearing on the Objections on September 30, 2020. See Clerks' Minutes at 1, filed September 30, 2020 (Doc. 121). First, the Court asked Johnson whether all "the remaining objections go to the calculation of the Guidelines sentence," and Johnson agreed. Draft Transcript of Hearing at 3:18-22 (taken September 30, 2020)(Court, Erickson)("Tr.").[1] Johnson noted that he objects to the Court considering his assault conviction, because it occurred before he was eighteen. See Tr. at 7:16-19 (Erickson). Johnson also discussed Application Note 1 to U.S.S.G. § 4A1.2,[2] which he contends "says that for all the offenses that a person is convicted of,

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

[2]Application note 7 states:

commits prior to the age of eighteen, the time period of applicability is five years." Tr. at 8:3-16 (Erickson). Johnson emphasized that Application Note 1 applies to all offenses committed before the age of eighteen, regardless whether a juvenile is convicted as an adult. See Tr. at 8:18-25 (Erickson). Johnson continued that he was released from custody relating to the assault charges more than five years ago, and, therefore, argued that the assault conviction should neither (i) be counted towards his criminal history score; nor (ii) be used as a predicate for the Career Offender designation. See Tr. at 9:1-17 (Erickson). The United States responded, emphasizing U.S.S.G. § 4A1.2(d)(1), which states: "If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence." U.S.S.G. § 4A1.2(d)(1). See Tr. at 10:1-5 (Pfizenmayer). The USPO observed that Johnson was convicted as an adult, "and he received a sentence in excess of 13 months, and therefore the provisions of the 15-year time period as outlined in U.S.S.G. § 4A1.1(A) apply." Tr. at 11:16-20 (Borland). Johnson urged the Court to "defer to the application note, which says that the provision applies to all offenses committed prior to age 18." Tr. at 12:16-23 (Erickson). The Court asked Johnson if he would like to argue his second objection, and Johnson said he did not "have anything to add about that." Tr. at 14:14-18 (Erickson). Johnson conceded his third objection, acknowledging that the "Court has controlling authority about that via Chavez," 660 F.3d at 1228, which contradicts his position in the Objections. Tr. at 14:14-18 (Erickson).

Last, Johnson explained the background to his fourth objection:

> The basic story is that at the time that Mr. Johnson was committed that offense and he was convicted of it, the Michigan statute criminalized possession and distribution of hemp. Subsequent to that the AIA was passed, changing the Controlled Substance Act, eliminating hemp from the controlled substances list. The effect of this is that when the Court applies its categorical analysis of the marijuana offense, it's now in a situation where it compares the Michigan statute

---

**Offenses Committed Prior to Age Eighteen.** Section 4A1.2(d) covers offenses committed prior to age eighteen. Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records. Therefore, for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted. To avoid disparities from jurisdiction to jurisdiction in the age at which a defendant is considered a "juvenile," this provision applies to all offenses committed prior to age eighteen.

U.S.S.G. § 4A1.2, Application Note 7 (bold in original).

that criminalizes hemp to the current Controlled Substances Act, which does not
criminalize hemp.  The result is that the  Michigan statute is overbroad.

Tr. at 14:20-15:7 (Erickson).  Johnson noted that he agrees with the United States that the Court

should examine whether the CSA criminalizes a particular controlled substance.  See Tr. at 15:8-

21 (Erickson)(citing United States v. Abdeljawad, 794 F. App'x 745 (10th Cir. 2019)).  Johnson

also contended that the United States agrees that the "Michigan statute is overbroad relative to the

current" CSA.  Tr. at 15:22-24 (Erickson).  Johnson stated that his primary disagreement with the

United States regarding his fourth objection is whether "the Court is comparing the old statute in

Michigan with . . . all federal statutes prior to the AIA, or is it comparing it to the present day"

CSA.  Tr. at 15:22-24 (Erickson).  Johnson suggested that United States v. Cantu, 964 F.3d at 928,

addresses a similar issue in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) context.

See Tr. at 17:1-12 (Erickson).  Johnson continued that, in United States v. Cantu, the Tenth Circuit

"compared the old state statute with the present day federal statute," as Johnson asks the Court to

do here.  Tr. at 17:13-23 (Erickson).  Moreover, Johnson insisted that United States v. Miller, No.

18-cr-6, 2020 WL 4812711, at *7 (W.D. Pa. Aug. 19, 2020), also supports his argument that the

Court should evaluate the current CSA.  See Tr. at 19:1-9 (Erickson).  Accordingly, Johnson

concluded that, because the "Michigan statute is overbroad," it "cannot be a predicate for the

Career Offender designation."  Tr. at 19:13-18 (Erickson).

Next, the United States provided the Court with its timeline of the Michigan and federal

statutes at issue:

> For context, I'll give you a brief timeline and that is the defendant was
> convicted in Michigan of a marijuana offense in 2013.  At that point in time, the
> federal and the state of Michigan definition of marijuana included hemp.  Then, on
> January 5, 2018, the defendant committed the current act, the current crimes for
> which he was convicted.  At that point in time the definitions were still the same.
> So both the state and the federal definitions included hemp in the definition of
> marijuana.  After the defendant committed the current crime, on December 20,
> 2018, the Agricultural  Improvement Act amended the federal definition of
> marijuana to exclude hemp.

Tr. at 20:2-16 (Pfizenmayer).

The United States explained that the U.S.S.G. does not define directly a controlled

substance offense.  See Tr. at 20:20-25 (Pfizenmayer).  Specifically, the United States observed,

the Guidelines "define what acts qualify, but not what substance qualifies."  Tr. at 20:20-25

(Pfizenmayer).  The United States argued, therefore, that, in the Tenth Circuit, courts must apply

the CSA's definitions of controlled substances.  See Tr. at 20:25-21:23 (Pfizenmayer).  The United

States continued that U.S.S.G. § 4B1.1 "make[s] it very clear . . . that the relevant time period for

evaluating whether or not a person is a career offender is at the time . . . the defendant committed

the current crime for which he pled guilty."  Tr. at 21:1-16 (Pfizenmayer).  In this case, therefore,

the United States argued that "the federal definition matched up with the state definition" and that

"it qualifies as a career offender offense."  Tr. at 21:11-17 (Pfizenmayer).  The United States also

noted that the AIA does not mention specifically retroactive application.  See Tr. at 21:1-16

(Pfizenmayer).  Johnson responded that there is no precedent "for the Court doing the categorical

analysis using essentially two statutes."  Tr. at 24:14-19 (Erickson).  Johnson concluded that

"nothing about" the U.S.S.G. "directs the Court in any kind of clear way that it's supposed to be

looking at this statute in a historical way."  Tr. at 26:1-10 (Erickson).

### 6.     The First Notice of Supplemental Authority.

On September 30, 2020, Johnson filed his first Notice of Supplemental Authority.  See

Notice of Supplemental Authority, filed September 30, 2020 (Doc. 120)("First Supp. Auth.").

Johnson notifies the Court about a recent decision in the Western District of Pennsylvania, United

States v. Miller, 2020 WL 4812711.  See First. Supp. Auth. at 1.  Johnson contends that, in this

case, "[t]he court applied the categorical analysis and compared the 2008 Pennsylvania statute with

the Controlled Substances Act at the time of sentencing."  First Supp. Auth. at 2.  He insists that

this case "supports Mr. Johnson's objection to paragraph 30 of the PSR, regarding his 2013

conviction for distribution of marijuana."  First. Supp. Auth. at 1.

### 7.     The Letter.

On December 15, 2020, Johnson filed a letter with the Court asking for the Court to

sentence him as soon as possible.  See Letter at 1, filed December 15, 2020 (Doc. 124).  He also

asked that he be transferred "to a  facility in Arizona close to my loved ones and significant other."

See Letter at 3.

### 8.     The Second Notice of Supplemental Authority.

On December 21, 2020, Johnson filed a second Notice of Supplemental Authority.  See

Notice of Supplemental Authority, filed December 21, 2020 (Doc. 125)("Second Supp. Auth.").

Johnson notifies the Court about a recent decision in the United States Court of Appeals for the

Ninth Circuit, United States v. Bautista, 982 F.3d 563 (9th Cir. 2020).  Second Supp. Auth. at 1.

Johnson contends that the issue in United States v. Bautista is "extremely similar to one before this Court." Second Supp. Auth. at 2. Specifically, Johnson maintains that the Ninth Circuit reversed the district court because "the Guidelines require the sentencing court to decide whether a prior offense qualifies as a 'controlled substance offense' at the time of sentencing." Second Supp. Auth. at 2 (quoting United States v. Bautista, 982 F.3d at 563). Accordingly, Johnson asks the Court to consider United States v. Bautista as persuasive authority.

## **RELEVANT LAW REGARDING THE GUIDELINES**

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory. 543 U.S. at 261. In excising the two sections, the Supreme Court left the remainder of the Sentencing Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)     to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551. To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar

crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate.");  United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ."   United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted)(quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006)).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Rita v. United States, 551 U.S. at 351.  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[3]

_____

[3]Attorneys and courts often say that the "Guidelines" are advisory, but it appears more appropriate to say that the resulting Guidelines ranges are advisory.  Gall v. United States, 552 U.S. at 46 ("As a result of our decision [in United States v. Booker], the Guidelines are now advisory . . . .");  United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory.");  United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors,

Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence. Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures.  The sentencing court may, however, also use these same departure

---

and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, see Gall v. United States, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, see Gall v. United States, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). Accord United States v. Chavez-Rodarte, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole.  The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

. . . .

The Supreme Court held in United States v. Booker that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in Kimbrough v. United States, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted).  In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield.  In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their United States v. Booker-granted authority to post-Guidelines analysis "variances."  Irizarry v. United States, 553 U.S. 708, 710-16 (2008).  A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably.  See Gall v. United States, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24, (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

factors in the <u>Booker</u> calculus, even if the court does not grant a downward departure.

<u>United States v. Apodaca-Leyva</u>, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.). The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." <u>Kimbrough v. United States</u>, 552 U.S. at 89. Applying § 3553(a)'s factors, the Court has concluded that the case of an illegal immigrant who re-entered the United States to provide for his two children and two siblings was not materially different from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted. <u>See United States v. Almendares-Soto</u>, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.).

## LAW REGARDING CAREER OFFENDERS

The Sentencing Guidelines authorize an increase in the criminal history category if the defendant is identified as a "career offender." <u>United States v. Thyberg</u>, No. 10-196 JAP, 2016 WL 8914537, at *2 (D.N.M. Oct. 6, 2016)(Parker, J.), <u>report and recommendation adopted</u>, No. 10-196 JAP, 2016 WL 8919405 (D.N.M. Dec. 5, 2016). The Sentencing Guidelines provide:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. The Sentencing Guidelines define "two prior felony convictions" as

> **(c)** The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c). The date that a defendant sustained a conviction shall be the date that the guilt of the defendant has been established, whether by guilty plea, trial, or plea of nolo contendere.

U.S.S.G. § 4B1.2 (bold in original). The Sentencing Guidelines further state that "a diversionary disposition is counted only where there is a finding or admission of guilt in a judicial proceeding." Application Note 3 to U.S.S.G. § 4A1.1.

## LAW REGARDING RELEVANT CONDUCT FOR SENTENCING

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning

is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, n.1(H).  In <u>United States v.</u>

<u>Booker</u>, the Supreme Court notes:

> Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction.  That determination is particularly important in the federal system where crimes defined as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by . . . extortion," . . . can encompass a vast range of very different kinds of underlying conduct.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)).  The Supreme Court's

reasoning in <u>United States v. Booker</u> suggests that the consideration of real conduct is necessary

to effectuate Congress' purpose in enacting the Guidelines.

Section 1B1.3(a) provides that the base offense level under the Guidelines "shall be

determined" based on the following:

(1)

    (A)    all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

    (B)    in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)    solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)    all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)    any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4).  The court may consider, as relevant conduct, actions that have not

resulted in a conviction.  Pursuant to § 6A1.3's commentary, evidentiary standards lower than

beyond a reasonable doubt are permitted to show relevant conduct.  The court may rely upon

reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard.  <u>See</u>

<u>United States v. Vigil</u>, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning, J.), <u>aff'd</u>, 523 F.3d

1258 (10th Cir. 2008).  <u>Accord</u> <u>United States v. Schmidt</u>, 353 F. App'x 132, 135 (10th Cir.

2009)(unpublished)("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review."). The evidence and information upon which the court relies, however, must have sufficient indicia of reliability. See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Supreme Court precedent on relevant conduct consists primarily of two cases: Witte v. United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997). In Witte v. United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge. See 515 U.S. at 404-06. The defendant in Witte v. United States had been involved in an unsuccessful attempt to import marijuana and cocaine into the United States in 1990, and in an attempt to import marijuana in 1991. See 515 U.S. at 392-93. In March, 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics. See 515 U.S. at 392-93. At sentencing, the district court concluded that, because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and thus calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes. See 515 U.S. at 394.

In September, 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with his activities in 1990. See 515 U.S. at 392-93. The defendant moved to dismiss the indictment, contending that he had already been punished for the cocaine offenses, because the court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense. See 515 U.S. at 395. The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments in the Double Jeopardy Clause of the Fifth Amendment to the Constitution. See 515 U.S. at 395. The United States Court of Appeals for the Fifth Circuit reversed and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct." United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994). In reaching this holding, the Fifth Circuit acknowledged that its conclusion was

contrary to other United States Courts of Appeals opinions, including a Tenth Circuit opinion, that had previously considered this question. See 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of Appeals and affirmed the Fifth Circuit decision. See Witte v. United States, 515 U.S. at 395. In holding that a district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." 515 U.S. at 401. The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense." 515 U.S. at 402. Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity." 515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte v. United States and upheld, against a double-jeopardy challenge, a sentencing judge's use of conduct for which the defendant had been acquitted. See United States v. Watts, 519 U.S. at 149. The Supreme Court noted that its conclusion was in accord with every United States Court of Appeals -- other than the Court of Appeals for the Ninth Circuit -- and that each had previously held that a sentencing court may consider conduct for which the defendant had been acquitted, if the government establishes that conduct by a preponderance of the evidence. See 519 U.S. at 149 (citing United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir. 1991)). The Supreme Court began its analysis with 18 U.S.C. § 3661: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." United States v. Watts, 519 U.S. at 151 (quoting 18 U.S.C. § 3661). According to the Supreme Court, 18 U.S.C. § 3661 codifies "the longstanding principle that sentencing courts have broad discretion to consider various kinds of information" and that "the Guidelines did not alter

this aspect of the sentencing court's discretion."  United States v. Watts, 519 U.S. at 151-52.

Tenth Circuit caselaw now adheres closely to the Supreme Court's results in Witte v. United States and United States v. Watts.  See United States v. Andrews, 447 F.3d 806, 810 (10th Cir. 2006)(applying Witte v. United States' holding to affirm that a career-offender enhancement does not violate the Fifth Amendment's Double Jeopardy Clause).  In United States v. Banda, 168 F. App'x 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that it was "structural error" for a district court to find sentencing factors "by a preponderance of the evidence rather than the jury applying a beyond-a-reasonable-doubt standard."  168 F. App'x at 290. The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by themselves do not violate the Sixth Amendment.  Instead, the constitutional error was the court's reliance on judge-found facts to enhance the defendant's sentence mandatorily.'"  168 F. App'x at 290 (quoting United States v. Lauder, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In United States v. Coleman, the defendant appealed the district court's sentence enhancement for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute but was acquitted of using or carrying a firearm during and in relation to a drug trafficking crime.  See 947 F.2d at 1428.  The Tenth Circuit acknowledged that courts had taken various positions on whether a sentence may be enhanced for firearms possession despite a defendant's acquittal on firearms charges.  See 947 F.2d at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); United States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(Green, J.)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy")).

Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing the defendant's sentence for possession of a firearm.  See United States v. Coleman, 947 F.2d at 1429. The Tenth Circuit based its conclusion on evidence that: (i) individuals at the arrest scene handled the weapons at will; (ii) the weapons were handled at will by individuals who lived at the house;

and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved. See 947 F.2d at 1429. The Tenth Circuit summarized that, in reviewing relevant federal case law, it found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted." 947 F.2d at 1429.

Relatedly, in United States v. Washington, the defendant argued that the United States needed to prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence, rather than by a preponderance of the evidence. See 11 F.3d at 1512. The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his Guidelines sentencing range from 210-262 months to life in prison. See 11 F.3d at 1515. The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required." 11 F.3d at 1515. Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard." 11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986)). See United States v. Sangiovanni, 2014 WL 4347131, at *22-26 (concluding that a sentencing court can cross reference from the Guidelines that correspond to the defendant's crime of conviction to the Guidelines for another, more harshly punished crime, if it can be established by a preponderance of the evidence that the defendant committed the more serious crime); United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1314-15 (D.N.M. 2014)(Browning, J.)(cross-referencing from the guideline for being an illegal alien in possession of a firearm to the drug-possession guideline after finding by a preponderance of the evidence that the defendant committed a drug-possession crime).

The Court previously has held that it may consider a defendant's refusal to answer questions for the PSR, while not drawing an adverse inference from the refusal. See United States v. Goree, No. CR 11-0285 JB, 2012 WL 592869, at *11 (D.N.M. 2012)(Browning, J.). The Court also has held that, although it can consider a defendant's silence about information regarding herself or others engaging in criminal conduct, it will not rely on that silence to increase the

defendant's sentence.  See United States v. Chapman, No. CR 11-0904 JB, 2012 WL 2574814, at

*13 n.5 (D.N.M. 2012)(Browning, J.).  Finally, the Court has held that a defendant's "aggression

towards other individuals, and the murder he may have attempted to orchestrate while

incarcerated" is relevant information which the Court can consider in fashioning a proper sentence.

United States v. Romero, No. CR 09-1253 JB 2012 WL 6632493, at *23 (D.N.M. Dec. 6,

2012)(Browning, J.).  See United States v. Tapia, No. CR 12-3012 JB, 2017 WL 6417610, at *10-

15 (D.N.M. Dec. 14, 2017)(Browning, J.).

### LAW REGARDING CALCULATING CRIMINAL HISTORY

Section 4A1.1 of the U.S.S.G states, in relevant part: "The total points from items (a)

through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part

A."  U.S.S.G. § 4A1.1.  Subsection (a) states: "Add **3** points for each prior sentence of

imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1(a) (bold in original).

Application Note 1 to U.S.S.G. § 4A1.1 states:

> Certain prior sentences are not counted or are counted only under certain
> conditions:
>
> A sentence imposed more than fifteen years prior to the defendant's
> commencement of the instant offense is not counted unless the
> defendant's incarceration extended into this fifteen-year period. *See*
> § 4A1.2(e).
>
> A sentence imposed for an offense committed prior to the
> defendant's eighteenth birthday is counted under this subsection
> only if it resulted from an adult conviction. *See* § 4A1.2(d).
>
> A sentence for a foreign conviction, a conviction that has been
> expunged, or an invalid conviction is not counted. *See* § 4A1.2(h)
> and (j) and the Commentary to § 4A1.2.

U.S.S.G. § 4A1.1 Application Note 1.  Subsection (b) to U.S.S.G. § 4A1.1 states: "Add **2** points

for each prior sentence of imprisonment of at least sixty days not counted in (a)."  (bold in original).

There is no limit to the number of points that may be added under either subsection (a) or

subsection (b).  See U.S.S.G. § 4A1.1 Application Notes 1, 2.

Section 4A1.2(d) handles "offenses committed prior to age eighteen."  U.S.S.G. § 4A1.2(d)

(title case omitted).  It provides that, "[i]f the defendant was convicted as an adult and received a

sentence of imprisonment exceeding one year and one month, add **3** points under § 4A1.1(a) for

each such sentence."  U.S.S.G. § 4A1.2(d) (bold in original).  Application Note 1 to U.S.S.G.

§ 4A1.2 provides that,

for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted.

U.S.S.G. § 4A1.2 Application Note 1.

Section 4A1.2(a)(2), which announces definitions and instructions for computing criminal history, provides:

If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2). According to § 4A1.2(a)(2)'s plain language, if an intervening arrest separates two sentences, the two sentences are considered separate for the purposes of criminal history calculation, even if the sentences were imposed at the same hearing. See, e.g., United States v. Chavez, No. CR 18-0836 JB, 2018 WL 6621283, at \*11 (D.N.M. Dec. 18, 2018)(Browning, J.). For the two prior sentences to be considered a single sentence when no intervening arrest separates the two sentences, one of § 4A1.2(a)(2)'s preconditions must apply, and the sentences must have either emanated from the same charging instrument or been imposed on the same day. See U.S.S.G. § 4A1.2(a)(2). "That observation is, accordingly, the end of the debate for purposes of applying § 4A1.2(a)(2)." United States v. Bhakta, No. CR 16-1090 JB, 2017 WL 4785953, at \*9 (D.N.M. Oct. 21, 2017)(Browning, J.).

Section 4A1.1(e) provides: "Add **1** point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because the sentence was treated as a single sentence, up to a total of **3** points for this subsection." U.S.S.G. § 4A1.1(e) (bold in original). Application Note 5 to U.S.S.G. § 4A1.1 provides, in relevant part:

In a case in which the defendant received two or more prior sentences as a result of convictions for crimes of violence that are treated as a single sentence (*see* § 4A.1.2(a)(2)), one point is added under § 4A1.1(e) for each such sentence that did not result in any additional points under § 4A1.1(a), (b), or (c). A total of up to 3 points may be added under § 4A1.1(e).

U.S.S.G. § 4A1.1 Application Note 5 (italics in original).

**LAW REGARDING DOWNWARD DEPARTURES**

"[T]he Guidelines place essentially no limit on the number of potential factors that may warrant a departure." Burns v. United States, 501 U.S. 129, 136 (1991), abrogated on other grounds by United States v. Booker, 543 U.S. 220. See United States v. Coleman, 188 F.3d 354, 358 (6th Cir. 1999)(en banc)(stating that "[t]here are a potentially infinite number of factors which may warrant a departure"); 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence"). A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline." Koon v. United States, 518 U.S. 81, 98 (1996). Accord United States v. Lewellen, No. CR 11-1524 JB, 2012 WL 2175769, at *5 (D.N.M. June 5, 2012)(Browning, J.).

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

Koon v. United States, 518 U.S. at 113.

For example, in United States v. Jim, 877 F. Supp. 2d 1018 (D.N.M. 2012)(Browning, J.), the Court did not grant a defendant's request for a downward departure under U.S.S.G. § 4A1.3(b), where the defendant argued that his criminal history category overrepresented the seriousness of his criminal history and the likelihood that he would commit other crimes. See United States v. Jim, 877 F. Supp. 2d at 1044-45. The Court noted that Jim's criminal history included: "(i) two DWI convictions; (ii) a conviction for Roadway Laned for Traffic; and (iii) Abandonment or Abuse of a Child." United States v. Jim, 877 F. Supp. 2d at 1045. The Court concluded that a criminal history category of II did not over-represent Jim's criminal history, explaining that Jim's previous convictions involved alcohol and driving, demonstrating a pattern of aberrant use of alcohol also seen in the offense for which he was sentenced -- sexual assault -- as Jim asserted that both he and the victim were intoxicated at the time he assaulted the victim. See United States v. Jim, 877 F. Supp. 2d at 1022-23, 1044-45. The Court noted that "[i]t does not take much for a defendant to qualify for a criminal history category of II" and that the Court could not distinguish

Jim's criminal history from that of other defendants that the Court regularly sees who also have a criminal history category of II, and thus denied Jim's request for a downward departure under U.S.S.G. § 4A1.3.  United States v. Jim, 877 F. Supp. 2d at 1045.

In United States v. Jager, No. CR 10-1531 JB, 2011 WL 831279 (D.N.M. Feb. 17, 2011)(Browning, J.), the Court denied a defendant's request for a downward departure, under U.S.S.G. § 5H1.11, based upon the defendant's eleven years of military service.  See United States v. Jager, 2011 WL 831279, at *10-11.  Even though Jager had received exemplary reviews in his military performance reports, earning either the highest or second highest ratings possible, the Court concluded that his service was not present in an unusual degree or distinguishable from other cases which the Guidelines cover.  See United States v. Jager, 2011 WL 831279, at *10-11.  The Court noted that in many child pornography cases, such as Jager's case, the defendant leads an exemplary life publicly, while engaging in a sordid secret life privately.  See United States v. Jager, 2011 WL 831279, at *11.  Additionally, Jager was not in intense combat during his military career; most of his time was spent in the support role of a mechanic.  See United States v. Jager, 2011 WL 831279, at *11.  The Court concluded, thus, that Jager's military service did not distinguish his case from those of many other defendants who commit child pornography, and the Court denied Jager's request for a downward departure.  See United States v. Jager, 2011 WL 831279, at *11.

## LAW REGARDING MINOR ROLE ADJUSTMENT

Section 3B1.2 provides for a 2- to 4-level downward adjustment of a criminal defendant's offense level if the criminal was a "minor" or "minimal" participant in the crime for which he or she is being sentenced.  U.S.S.G. § 3B1.2.  The Tenth Circuit has determined that the district court has discretion over this downward adjustment and that the court only should grant it if the court finds that the defendant is less culpable than the other participants in the particular offense.  See United States v. Santistevan, 39 F.3d 250, 254 (10th Cir. 1994). It is the defendant's burden to prove, by a preponderance of the evidence, that he or she was a minor participant.  See United States v. Mendez, 272 F. App'x 703, 705 (10th Cir. 2008)(unpublished)(citing United States v. Santistevan, 39 F.3d at 254).

The commentary to the Guidelines, which is authoritative unless it conflicts with federal law, states that the 4-level decrease for "minimal" participation will be used infrequently and should be reserved for "defendants who are plainly among the least culpable of those involved in

the conduct of a group." U.S.S.G. § 3B1.2 Application Note 4. The 2-level decrease for "minor" participation applies to individuals who are "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 Application Note 5. "Finally, the Guidelines permit a three-level decrease for an individual whose culpability is somewhere between that of either a minimal or a minor participant." United States v. Santistevan, 39 F.3d at 254. See U.S.S.G. § 3B1.2.

The Tenth Circuit has repeatedly addressed the situation in which a drug courier requests a downward adjustment of offense level based on U.S.S.G. § 3B1.2. See, e.g., United States v. Martinez, 512 F.3d 1268, 1276 (10th Cir. 2008)(Tymkovich, J.); United States v. Rangel-Arreola, 991 F.2d 1519, 1524 (10th Cir. 1993); United States v. Arredondo-Santos, 911 F.2d 424, 426 (10th Cir. 1990); United States v. Calderon-Porras, 911 F.2d 421, 423 (10th Cir. 1990). The Tenth Circuit has consistently held that a defendant being a courier does not, ipso facto, render him or her a minor participant:

> [W]e have consistently "refused to adopt a per se rule allowing a downward adjustment based solely on a defendant's status as a drug courier." *United States v. Rangel-Arreola*, 991 F.2d [at] 1524 . . . . We explained, "[d]rug couriers are an indispensable component of drug dealing networks." *Id.* To debate whether couriers as a group are less culpable would not be productive, "akin to the old argument over which leg of a three-legged stool is the most important leg." *United States v. Carter*, 971 F.2d 597, 600 (10th Cir. 1992).

United States v. Martinez, 512 F.3d at 1276. Courts must therefore make a fact-intensive inquiry whether the courier was, for reasons other than his or her mere status as a courier, a minor or minimal participant in the relevant crimes.

## ANALYSIS

The Court calculates Johnson's Guidelines range as 262-327 months. See U.S.S.G. Ch. 5, Pt. A. The Court reaches this figure by: (i) applying the Guidelines' career offender offense level of 37; (ii) adjusting 3 levels downward for acceptance of responsibility and assistance to authorities; and (iii) applying a Criminal History category of VI. Johnson violated 21 U.S.C. § 841 by committing the following offense: "Possession with Intent to Distribute 500 Grams and More of a Mixture or Substance Containing Methamphetamine." PSR at 1 (no paragraph numbering). The Guidelines provide for a Base Level Offense of 34 for violations of 21 U.S.C. § 841. See U.S.S.G. § 2D1.1(c)(3)(providing a Base Level Offense of 34 for "[a]t least 5 KG but

less than 15 KG of Methamphetamine, or at least 500 G but less than 1.5 KG of Methamphetamine (actual), or at least 500 G but less than 1.5 KG of 'Ice'"); PSR ¶ 9, at 3 (noting that Johnson possessed 875 grams of methamphetamine (actual)); Plea Agreement ¶ 6, at 3. Johnson is a career offender under U.S.S.G. § 4B1.1(a), because he has one prior violent felony conviction and three prior controlled substance offenses. See U.S.S.G §4B1.1(b)(1). The career offender designation enhances Johnson's offense level to 37, because the statutory maximum imprisonment term is life. See 21 U.S.C. § 841. Johnson's acceptance of responsibility and assistance to the authorities decrease his offense level to 34. See U.S.S.G. § 3E1.1(a)-(b); PSR ¶¶ 22-24, at 5. Because Johnson is a career offender, he has a criminal history category of VI. See U.S.S.G § 4B1.1(b). Johnson's Guidelines sentence range, therefore, is 262-327 months, or 21.83 years-27.25 years. See U.S.S.G. Ch. 5, Pt. A. The Guideline term of supervised release is five years. See U.S.S.G. § 5D1.2(c).

I.     **JOHNSON'S 1997 ASSAULT CONVICTION, WHICH OCCURRED WHEN HE WAS SEVENTEEN YEARS OLD, SHOULD BE COUNTED TOWARD HIS CRIMINAL HISTORY SCORE AND CONSIDERED AS A PREDICATE OFFENSE FOR HIS DESIGNATION AS A CAREER OFFENDER, BECAUSE HE WAS CHARGED AND CONVICTED AS AN ADULT IN STATE COURT.**

Johnson contends that his 1997 conviction for "assault excluding sexual (assault with intent to murder)" and "felony firearm," PSR ¶ 27, at 5, should not be counted, because he was seventeen at the time of the assault, see Objections at 1. The U.S.S.G. provides: "If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence." U.S.S.G. § 4A1.2(d)(1). Moreover, the U.S.S.G. includes crimes of violence as predicate crimes in designating a defendant as a career offender. See U.S.S.G. § 4B1.1(a). The USPO maintains that Johnson "was charged and convicted in adult state court (rather than juvenile court)." PSR Addendum at 1.

The Court addressed a similar issue in United States v. Gallegos, 301 F. Supp. 3d 989 (D.N.M. 2017)(Browning, J.), and added 3 points to the defendant's criminal history calculation, because the defendant's "previous sentence was an adult sentence of imprisonment exceeding one year and one month." 301 F. Supp. 3d at 990. There, like the USPO here, see PSR Addendum at 1, the USPO argued that the defendant's "convictions . . . for robbery and aggravated battery with a deadly weapon" at age seventeen qualify for 3 criminal history points under U.S.S.G. § 4A1.1(a), because the defendant was "sentenced as an adult," United States v. Gallegos, 301 F. Supp. 3d at

990.  The Court noted that the Defendant committed the offense at issue when he was seventeen, but was sentenced when he was eighteen.  See United States v. Gallegos, 301 F. Supp. 3d at 991.  The Court, therefore, held that, because the defendant's sentence "is an adult sentence of imprisonment exceeding one year and one month, U.S.S.G. § 4A1.2(d) applies, and the PSR, therefore, properly assesses 3 criminal history points for that sentence."  United States v. Gallegos, 301 F. Supp. 3d at 991-92.

Here, by contrast, both the assault itself and Johnson's sentencing occurred when he was seventeen.  See PSR ¶ 27, at 5.  The conviction itself, however, was an "adult criminal conviction" for which Johnson was sentenced over one year and one month.  PSR ¶ 27, at 5.  See U.S.S.G. § 4A1.2(d).  Similarly, in United States v. McNeil, 90 F.3d 298 (8th Cir. 1996), although the defendant was seventeen at the time of his offense and conviction, "he was charged as an adult, convicted as an adult, and sentenced to a three-year term of imprisonment."  90 F.3d at 299.  The Honorable David R. Hansen, United States Circuit Judge for the United States Court of Appeals for the Eighth Circuit, explains that "an offense committed prior to age 18 counts for criminal history purposes as long as the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month."   United States v. McNeil, 90 F.3d  at 300 (citing U.S.S.G. § 4B1.1).   Judge Hansen also concludes that, consequently, the district court categorized properly the defendant as a career offender.  See United States v. McNeil, 90 F.3d at 299.

Relatedly, in United States v. Moorer, 383 F.3d 164 (3d Cir. 2004), the "principle issue" was whether the defendant's aggravated assault conviction "counts towards establishing his career offender status, even though" the defendant "was only 17 years old at the time."  383 F.3d at 166.  There, the defendant assaulted a juvenile corrections officer, and the New Jersey Superior Court sentenced the defendant to "an indeterminate term of incarceration (not to exceed five years) at . . . a facility housing older juveniles and younger adults under the control of the New Jersey Department of Corrections."  United States v. Moorer, 383 F.3d at 166.  The defendant did not "contest that he was convicted as an adult," but disputed the definition of "prior felony conviction" under U.S.S.G. § 4B1.1(a).  United States v. Moorer, 383 F.3d at 167.  First, the Honorable Sue L. Robinson, United States Circuit Judge for the United States Court of Appeals for the Third Circuit, recites the definition of "prior felony conviction" from Note 1 to U.S.S.G. § 4B1.1:

"Prior felony conviction" means a prior adult federal or state *conviction* for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and *regardless of the actual sentence imposed . . . . A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted.*

United States v. Moorer, 383 F.3d at 167 (emphasis added in United States v. Moorer)(quoting U.S.S.G. § 4B1.1 n.1).  Judge Robinson explains that U.S.S.G. § 4B1.1 describes specifically a prior felony conviction as "any state conviction that was counted as an adult conviction by the laws of that state."  United States v. Moorer, 383 F.3d at 167.  Accordingly, Judge Robinson concludes that the defendant is a career offender, because his assault conviction "is a prior felony conviction for the purposes of career offender status."  383 F.3d at 166.

Here, the Court concludes that, because Johnson was convicted and sentenced as an adult, his 1997 assault conviction counts add 3 points to his criminal history score.  See United States v. Conca, 635 F.3d 55, 65 (2d Cir. 2011)(explaining that, where the defendant had been convicted as an adult and received a sentence of imprisonment exceeding one year and one month for criminal possession of stolen property, a felony, at age sixteen, counted towards the defendants' criminal history calculation under U.S.S.G. § 4A1.2(d)).  "A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted."  U.S.S.G. § 4B1.2 n.1.  The relevant state here, Michigan, tries all seventeen-year old offenders as adults.  See Mich. Comp. Laws § 600.606(1) (effective until Sept. 30, 2021)("The circuit court has jurisdiction to hear and determine a specified juvenile violation if committed by a juvenile 14 years of age or older and less than 17 years of age.").  Cf. Mich. Comp. Laws § 600.606 (effective Oct. 1, 2021)("The circuit court has jurisdiction to hear and determine a specified juvenile violation if committed by a juvenile 14 years of age or older and less than 18 years of age."); Lauren Gibbons, Whitmer Signs Bills Classifying 17-year-olds as Youth in Michigan's Criminal Justice System, Mich. Live (Oct. 31, 2019), https://www.mlive.com/public-interest/2019/10/whitmer-signs-bills-classifying-17-year-olds-as-youth-in-michigans-criminal-justice-system.html.  Johnson cites Application Note 7 to U.S.S.G. § 4A1.2, which states:

**Offenses Committed Prior to Age Eighteen.** Section 4A1.2(d) covers offenses committed prior to age eighteen. Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records. Therefore, for offenses committed prior to age

- 28 -

> eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted. To avoid disparities from jurisdiction to jurisdiction in the age at which a defendant is considered a "juvenile," this provision applies to all offenses committed prior to age eighteen.

U.S.S.G. § 4A1.2, n.7 (bold in original).  See Objections at 2.  Johnson argues that, therefore, "the maximum time period of applicability for *any offense* under section 4A1.2(d) is five years from the date of release."  Objections at 2 (emphasis in original).  U.S.S.G. § 4A1.2(d)(1), however, instructs courts to add 3 points to a defendant's criminal history calculation "[i]f the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.2(d)(2) then explains that, "in any other case," courts should add criminal history points only where "the defendant was released from such confinement within five years of his commencement of the instant offense."  In this case, Johnson received an adult criminal conviction with a nine to twenty-two year sentence.  See PSR ¶ 27, at 5.  Johnson's 1997 assault conviction, therefore, falls under U.S.S.G. § 4A1.2(d)(1), because it "is an adult sentence of imprisonment exceeding one year and one month," and Johnson thus receives 3 criminal history points because of this conviction.  United States v. Gallegos, 301 F. Supp. 3d at 991-92.  See PSR ¶ 27, at 5.

Likewise, the assault conviction acts as a predicate offense to classifying Johnson as a career offender.  See United States v. Moorer, 383 F.3d at 166-67; United States v. Smith, 553 F. Supp. 2d 263, 264 (W.D.N.Y. 2008)(Siragusa, J.)(concluding that the defendant's conviction of a "crime of violence felony" -- robbery -- in adult court at age fourteen, could be counted in deciding whether the defendant was a career offender), aff'd, 376 F. App'x 140 (2d Cir. 2010); PSR ¶ 27, at 5.[4]  First, "whether a prior conviction can be counted as a predicate offense under § 4B1.1 must be determined by referring to § 4A1.2."  United States v. Mason, 284 F.3d 555, 562 (4th Cir. 2002).  U.S.S.G. provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled

---

[4]United States v. Moorer and United States v. McNeil align closely with the Court's precedent in United States v. Gallegos, 301 F. Supp. 3d at 989.  The logical extensions of the Court's reasoning in United States v. Gallegos is that where a defendant is sentenced as an adult, his or her conviction counts as an adult conviction for the U.S.S.G.'s purposes.  See United States v. Gallegos, 301 F. Supp. 3d at 989.  The Court, therefore, relies upon the reasoning in United States v. Moorer and United States v. McNeil here.

substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1.  U.S.S.G. § 4B1.2 defines "crime of violence," "controlled substance offense," and "two prior felony convictions." U.S.S.G. § 4B1.1 n.1.  A crime of violence is:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --

(1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2)     is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)

U.S.S.G. § 4B1.2(a).  Johnson received a punishment of over one year for his conviction.  See U.S.S.G. § 4B1.2(a).  Further, Johnson's conviction for assault with intent to murder "has as an element the use . . . of physical force against the person of another . . . ."  U.S.S.G. § 4B1.2(a)(1). See PSR ¶ 27, at 5.  Moreover, like the defendants' conviction in United States v. Moorer and United States v. McNeil, Johnson's 1997 assault conviction is a "prior felony conviction," because it was "classified as an adult conviction under the laws of the jurisdiction in which the defendant as convicted."  U.S.S.G. § 4B1.2 n.1.  See United States v. Moorer, 383 F.3d at 166; United States v. McNeil, 90 F.3d at 299.   Because Johnson's 1998 assault conviction is a "prior felony conviction" and a "crime of violence," it therefore acts as a predicate offense to his career offender classification.  U.S.S.G. § 4B1.1.  See United States v. Moorer, 383 F.3d at 166; United States v. McNeil, 90 F.3d at 299; PSR ¶ 27, at 5.

## II.     JOHNSON'S CONVICTIONS ARE CONTROLLED SUBSTANCE OFFENSES, BECAUSE THE STATE STATUTE MATCHES CATEGORICALLY THE U.S.S.G.'S CONTROLLED SUBSTANCE OFFENSE DEFINITION.

Johnson's 2008 heroin conviction, see PSR ¶ 29, at 6 and his 2013 marijuana conviction, see PSR ¶ 30, at 6-7, are controlled substance offenses.  Johnson asks the Court to apply a categorical analysis, and determine that, because Michigan's "statute of conviction encompasses a broader range of conduct than the conduct described in section 4B1.2(b), then the state conviction does not meet the Guidelines' definition and is not a categorical match."  Objections at 3.  The USPO, by contrast, argues that the Court should apply the modified categorical approach.  See PSR Addendum at 3.  To apply the categorical approach, the Court must "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic'

crime" -- here, the Court must compare Mich. Comp. Laws. Ann. § 333.7401 to how the U.S.S.G. defines a controlled substances offense.  Descamps v. United States, 570 U.S. 254, 257 (2013). Under the categorical approach, Johnson's prior convictions qualify as controlled substance offenses "only if the statute's elements are the same as, or narrower than, those of the generic offense."  Descamps v. United States, 570 U.S. at 257;  See United States v. Kendall, 876 F.3d at 1267 ("The categorical approach focuses solely on the 'elements of the statute forming the basis of the defendant's conviction'; the specific facts of the defendant's case are irrelevant.")(quoting Descamps v. United States, 570 U.S. at 257). The modified categorical approach "permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction."  Descamps v. United States, 570 U.S. at 257.

The Court applies the categorical approach to indivisible statutes, but applies the modified categorical approach where the statute is divisible.  See Descamps v. United States, 570 U.S. at 257-58 (noting that modified categorical review is never appropriate where the prior conviction was pursuant to an indivisible statute).  A statute is divisible when "it lists multiple, alternative elements, and so effectively creates several different crimes."  United States v. Taylor, 843 F.3d 1215, 1220 (10th Cir. 2016)(internal quotations omitted).  To determine whether the statute is divisible, first, the Court examines "'authoritative sources of state law,' including the statute on its face and state-court decisions."  United States v. Cantu, 964 F.3d at 928 (quoting Mathis v. United States, 136 S. Ct. 2243, 2256 (2016)).  The Michigan law at issue provides, in relevant part: "Except as authorized by this article, a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance, a prescription form, or a counterfeit prescription form."  Mich. Comp. Laws Ann. § 333.7401(1).  The Court concludes that the statute is divisible, because (i)   § 333.7401's subsections prescribe different penalties for the offenses described, see Mich. Comp. Laws Ann. § 333.7401; United States v. Taylor, 843 F.3d at 1220; and (ii), in Michigan, defendants are charged with a specific form of the offenses listed in the statute,  see, e.g., People v. Mass, 464 Mich. 615, 628 N.W.2d 540, 625 (2001); People v. Linton, 2016 WL 7333422, at *2 (Mich. Ct. App. Dec. 15, 2016). See also United States v. House, 872 F.3d 748, 753 (6th Cir. 2017)(concluding that "Michigan's controlled-substance statute is divisible")(citing Mich. Comp. Laws §  § 333.7401 and United States v. Tibbs, No. 15-060, 685

F. App'x 456 (6th Cir. 2017)).  Because Mich. Comp. Laws § 333.7401 is divisible, the modified categorical approach applies.  See Descamps v. United States, 570 U.S. at 257-58.

Johnson "possessed with intent to deliver heroin" under Mich. Comp. Laws § 333.7401. PSR ¶ 29, at 6.  Now that the Court has established that Johnson was convicted of/pled guilty to attempted delivery of heroin in violation of § 333.7401, the Court "must cast aside the actual facts of [Johnson's] conviction and apply the categorical approach to determine whether," United States v. Kendall, 876 F.3d 1264, 1269-70 (10th Cir. 2017), a controlled substance under Mich. Comp. Laws § 333.7401(1) is as a controlled substances offense under the U.S.S.G., see Descamps v. United States, 570 U.S. at 257.

The Court concludes Mich. Comp. Laws § 333.7401(1) matches categorically the U.S.S.G.'s controlled substance offense definition, because the definitions of "deliver" and "transfer" fall within the U.S.S.G.  See U.S.S.G. § 4B1.2(b); Mich. Comp. Laws § 333.7105(1). See also United States v. Titties, 852 F.3d at 1266.  Although the state statutory definitions underlying Johnson's heroin and marijuana convictions do not match identically the U.S.S.G.'s controlled substance offense definition, the differing terms at issue are synonyms, and therefore are a categorical match.  See Descamps v. United States, 570 U.S. at 257.  Where the state statute at issue is broader than the U.S.S.G.'s controlled substance offense definition, the offense does not qualify as a controlled substance offense.  See United States v. Kendall, 876 F.3d at 1267.  By contrast, if the elements of the statute of conviction are narrower or equal to the Guidelines' controlled substance offense definition, then the conviction is a controlled substance offense.  See United States v. Kendall, 876 F.3d at 1267-68 (explaining that if the state statute "'sweeps more broadly' than the Guidelines' definition of a crime of violence -- that is, if someone *could* be convicted of violating the statute but *not* commit a crime of violence -- the statute cannot categorically be considered a crime of violence")(emphasis in original)(quoting United States v. Titties, 852 F.3d at 1268).  Here the Michigan statute at issue instructs that "a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance . . . ."  Mich. Comp. Laws § 333.7401(1).  The U.S.S.G. defines a controlled substance offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled

substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 4B1.2(b).

Unlike the state law underlying Johnson's convictions, see PSR ¶¶ 29-30, at 6-7, the U.S.S.G does not include the term "deliver" in its definition of controlled substance offense. Compare Mich. Comp. Laws. § 333.7401 with U.S.S.G. § 4B1.2(b).  After we determine the crime of conviction under the modified categorical approach, we then apply the categorical approach and we ignore "the actual facts of [Johnson's] conviction" United States v. Kendall, 876 F.3d at 1269. Under Michigan law, deliver or delivery "means the actual, constructive, or attempted transfer from 1 person to another of a controlled substance, whether or not there is an agency relationship." Mich. Comp. Laws. § 333.7105(1).  Johnson insists that "the Guidelines' definition does not by its own terms include mere deliveries, transfers, or attempted transfers."  Objections at 4.  The Court disagrees with this contention, applying the definitions of "deliver" and "transfer" to determine whether the terms fall within the U.S.S.G.  Objections at 4.  The Guidelines themselves do not define directly "delivery" or "transfer."  Glossary of Federal Sentencing Related Terms, United States Sentencing Commission (last visited Jan. 1, 2021), https://www.ussc.gov/education/glossary.  The Court, therefore, analyzes the terms' plain meaning.  See Hernandez v. Grisham, No. CIV 20-0942 JB\GBW, 2020 WL 7481741, at *64 (D.N.M. Dec. 18, 2020)(Browning, J.)(concluding that, where a statute does not define terms, the Court "must look to the 'ordinary meaning' of the terms")(quoting Mohamad v. Palestinian Auth., 566 U.S. 449, 454 (2012)).  First, deliver means: "The formal act of voluntarily transferring something; esp., the act of bringing goods, letters, etc. to a particular person or place" or "the thing or things so brought and transferred."  DELIVERY, Black's Law Dictionary[5] (11th ed. 2019). Second, "transfer" means: "To convey or remove from one place or one person to another; to pass or hand over from one to another, esp. to change over the possession or control of," or "to sell or give."  TRANSFER, Black's Law Dictionary (11th ed. 2019).  Relatedly, distribute means: "To apportion; to divide among several," "[t]o arrange by class or order," "[t]o deliver," or "[t]o spread out; to disperse."  DISTRIBUTE, Black's Law Dictionary (11th ed. 2019).  "Distribute" in the U.S.S.G., therefore, includes "deliver" in the Michigan statute, because distribute means "to

---

[5]The Court is using the version of Black's Law Dictionary on Westlaw, which does not have page numbers.

deliver." See Mich. Comp. Laws § 333.7105(1). Likewise, the definition of "distribute" overlaps with the definition of "transfer" -- "to convey or remove from one place or one person to another" is "to disperse." Compare TRANSFER, Black's Law Dictionary (11th ed. 2019) with DISTRIBUTE, Black's Law Dictionary (11th ed. 2019). Because MICH. COMP. LAWS § 333.7105(1) does not "'sweep[] more broadly' than the Guidelines,'" United States v. Kendall, 876 F.3d at 1267-68 (quoting United States v. Titties, 852 F.3d at 1268), Michigan's statute, therefore, is a categorical match with the generic federal controlled substance offense definition. See U.S.S.G. § 4B1.2(b); Mich. Comp. Laws § 333.7105(1). Accordingly, Johnson's offense is a controlled substance offense under the U.S.S.G. and acts as a predicate offense for his career offender designation. See Descamps v. United States, 570 U.S. at 257.

### III.   JOHNSON'S HEROIN CONVICTION QUALIFIES UNDER THE CAREER OFFENDER GUIDELINES, BECAUSE ATTEMPTS ARE INCLUDED IN THE U.S.S.G.'S CONTROLLED SUBSTANCE OFFENSE DEFINITION.

Johnson argues initially that his 2008 attempt conviction, see PSR ¶¶ 29, at 6, is outside the scope of the U.S.S.G.'s controlled substance offense definition, see Objections at 4. The United States disagrees and argues that, under Chavez, 660 F.3d at 1228, Johnson's attempt conviction is a controlled substance offense under the U.S.S.G. See Sentencing Memo at 11. At the hearing, Johnson conceded that the "Court has controlling authority about that via Chavez," 660 F.3d at 1228, which contradicts his position in the Objections, Tr. at 14:14-18 (Erickson). The Court agrees with the United States' contention that attempt convictions are controlled substance offenses under the U.S.S.G., relying upon the Sentencing Commission's "authoritative" interpretation of U.S.S.G. § 4B1.2. Stinson v. United States, 508 U.S. 36, 38 (1993). See U.S.S.G. § 4B1.2 Application Note 1.

The Commentary to U.S.S.G. § 4B1.2 states that "'controlled substance offense' includes the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 Application Note 1. The Honorable Scott M. Matheson, Jr., United States Circuit Judge for the Tenth Circuit, has written an opinion explaining that the Sentencing Commission, in writing Application Note 1, acted within 28 U.S.C. § 994's "broad grant of authority in construing attempts to commit drug crimes as controlled substance offenses for purposes of determining career offender status." Chavez, 660 F.3d at 1228. Accordingly, Judge Matheson's opinion affirms the Honorable Robert C. Brack, United States District Judge for the District of New Mexico,

classification of a defendant as a career offender, "[b]ecause the commentary interprets controlled substance offenses as including convictions for attempted drug trafficking, and because the commentary is authoritative . . . ." Chavez, 660 F.3d at 1228. The United States Courts of Appeals for the First, Eighth, and Eleventh Circuits have made similar conclusions. See United States v. Lange, 862 F.3d 1290, 1295 (11th Cir. 2017)(applying "[t]he text of the application note" to "cover[] prohibit[ing] manufacture of controlled substances by prohibiting those who aid and abet the attempt to do so"); United States v. Nieves-Borrero, 856 F.3d 5, 9 (1st Cir. 2017)(explaining that "the commentary to U.S.S.G. § 4B1.2 makes clear that a 'controlled substance offense' 'include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses,'" and concluding that "this particular commentary to U.S.S.G. § 4B1.2 [i]s authoritative")(quoting U.S.S.G. § 4B1.2); United States v. Mendoza–Figueroa, 65 F.3d 691, 694 (8th Cir. 1995)(en banc)(concluding that "U.S.S.G. § 4B1.2, n.1, is a reasonable interpretation of the career offender guidelines that is well within the Sentencing Commission's statutory authority"). By contrast, the United States Court of Appeals for the Sixth Circuit has held that "the Commission's use of commentary to add attempt crimes to the definition of 'controlled substance offense' deserves no deference," because, "[t]o make attempt crimes a part of U.S.S.G. § 4B1.2(b), the Commission did not interpret a term in the guideline itself," but instead "*added* an offense not listed in the guideline." United States v. Havis, 927 F.3d at 387 (emphasis in original).[6]

---

[6]The Sixth Circuit provides a helpful review of why the commentary to the U.S.S.G. deserves less deference than the Guidelines themselves:

[T]he Commission falls squarely in neither the legislative nor the judicial branch; rather, it is "an unusual hybrid in structure and authority," entailing elements of both quasi-legislative and quasi-judicial power. *Mistretta v. United States*, 488 U.S. 361, 412 (1989). In *Mistretta*, the Supreme Court explained how the Commission functions in this dual role without disrupting the balance of authority in our constitutional structure. Although the Commission is nominally a part of the judicial branch, it remains "fully accountable to Congress," which reviews each guideline before it takes effect. *Id.* at 393-94, 109 S. Ct. 647; *see also* 28 U.S.C. § 994(p). The rulemaking of the Commission, moreover, "is subject to the notice and comment requirements of the Administrative Procedure Act." *Id.* at 394, 109 S. Ct. 647; *see also* 28 U.S.C. § 994(x). These two constraints -- congressional review and notice and comment -- stand to safeguard the Commission from uniting legislative and judicial authority in violation of the separation of powers. Unlike the Guidelines themselves, however, commentary to the Guidelines never passes through the gauntlets of congressional review or notice and comment. That is also not a problem, the Supreme Court tells us, because commentary has no independent legal force -- it serves only to *interpret* the Guidelines' text, not to replace or modify it. *See Stinson*, 508 U.S. at 44-46; *see*

Likewise, the United States Court of Appeals for the District of Columbia Circuit has held that U.S.S.G. § 4B1.2(b) "presents a very detailed 'definition' of controlled substance offense that clearly excludes inchoate offenses." United States v. Winstead, 890 F.3d at 1091.  The Court, however, is bound by and agrees with the reasoning contained in Chavez.  See 660 F.3d at 1228.[7]

"Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it . . . is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. at 38.  Specifically, the Sentencing Commission may issue "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in" 18 U.S.C. § 3553(a)(2).[8]  28 U.S.C. § 994.  As the Sentencing Commission explains:

---

also United States v. Rollins, 836 F.3d 737, 742 (7th Cir. 2016)(en banc)("[T]he application notes are interpretations of, not additions to, the Guidelines themselves . . . .").  Commentary binds courts only "if the guideline which the commentary interprets will bear the construction." Stinson, 508 U.S. at 46.

United States v. Havis, 927 F.3d at 385-86.

[7]The Sentencing Commission's commentary to the U.S.S.G. is "authoritative." Stinson v. United States, 508 U.S. at 38.  U.S.S.G. § 4B1.2(b) does not state explicitly that it excludes inchoate offenses.  See U.S.S.G. § 4B1.2(b).  The Court, therefore, agrees with the Tenth Circuit that "the guideline which the commentary interprets will bear the construction." Stinson v. United States, 508 U.S. at 46.

[8]The statute states:

(a)    **Factors to be considered in imposing a sentence.** -- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider--

. . .

(2)    the need for the sentence imposed--

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective

> The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the guideline or explain how it is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. *See* 18 U.S.C. § 3742.

U.S.S.G. § 1B1.7 (Significance of Commentary).  Here, the Sentencing Commission's Application Note including attempt crimes under its controlled substance definition is a reasonable interpretation of U.S.S.G. § 4B1.2(b).  <u>See</u>  <u>Chavez</u>, 660 F.3d at 1228.  Further, Johnson conceded this objection at the hearing.  <u>See</u> Tr. at 14:14-18 (Erickson).  Accordingly, interpreting the Guideline in the light of the authoritative interpretation in Application Note 1, the Court concludes that Johnson's conviction for "attempted possession with intent to distribute heroin," PSR ¶ 29, at 6, is a "controlled substance offenses" under  U.S.S.G. § 4B1.2(b).  The attempt conviction, therefore, is a predicate offense for Johnson's qualification as a career offender.  <u>See</u> U.S.S.G. § 4B1.1; PSR ¶ 29, at 6.

**IV.  JOHNSON'S MARIJUANA CONVICTION IS A CONTROLLED SUBSTANCE OFFENSE, BECAUSE THE MICHIGAN LAW AT ISSUE IS NOT OVERBROAD.**

Johnson argues that his 2013 conviction for Possession with Intent to Deliver Marijuana, <u>see</u> PSR ¶ 30, at 6-7, is not a controlled substance offense under U.S.S.G. § 4B1.2(b), because Michigan law criminalizes hemp distribution, and the CSA does not.  <u>See</u> Objections at 6.  Both the United States and Johnson agree that, because the U.S.S.G. does not define marijuana, the CSA's marijuana definition applies.  <u>See</u> Tr. at 15:8-21 (Erickson)(citing <u>United States v. Abdeljawad</u>, 794 F. App'x at 745).  The Court agrees that the CSA definition applies, but concludes that Johnson's marijuana conviction is nevertheless a controlled substance offense.

The U.S.S.G., however, does not incorporate or refer to the CSA definition of marijuana. <u>See</u> U.S.S.G. § 4B1.2(b).  A Circuit Court of Appeals split exists whether to apply the CSA definitions of individual controlled substances like marijuana in the U.S.S.G context, and the Tenth Circuit has not ruled conclusively on the issue.  <u>Cf.</u> <u>United States v. Madkins</u>, 866 F.3d 1136, 1144 (10th Cir. 2017)(applying the CSA's definition of "distribute" when analyzing U.S.S.G. § 4b1.2(b)'s definition of "controlled substance offense").  <u>Accord</u> <u>United States v. McKibbon</u>, 878 F.3d 967, 972 (10th Cir. 2017)(same).  The United States Courts of Appeals for the Second,

---

manner;

18 U.S.C. § 3553(a)(bold in original).

Fifth, Eighth, and Ninth Circuits maintain that a "controlled substance" under U.S.S.G. § 4B1.2(b) refers to the CSA definition. U.S.S.G. § 4B1.2(b). See United States v. Townsend, 897 F.3d 66, 71 (2d Cir. 2018); United States v. Gomez-Alvarez, 781 F.3d 787, 793 (5th Cir. 2015); United States v. Leal-Vega, 680 F.3d 1160, 1166 (9th Cir. 2012); United States v. Sanchez-Garcia, 642 F.3d 658, 661 (8th Cir. 2011). The Sixth Circuit, however, concludes that "the career offender enhancement . . . does not limit its definition of controlled substance offense to specific federal violations," United States v. Sheffey, 818 F. App'x 513, 520-21 (6th Cir. June 29, 2020), and the Eleventh Circuit likewise declines to apply the CSA definition, see United States v. Peraza, 754 F. App'x 908, 909-10 (11th Cir. 2018). See also United States v. Ruth, 966 F.3d 642, 654 (7th Cir. 2020)(explaining that, although "[w]e think that the Sixth and Eleventh Circuits have the better take of the issue," "we are not joining a side today").

In U.S.S.G. § 4B1.2(b)'s original iteration, the Sentencing Commission defined "controlled substance offense" as "an offense identified in 21 U.S.C. §§ 841, 952(a), 955, 955a, 959; §§ 405B and 416 of the Controlled Substance Act as amended in 1986, and similar offenses." U.S.S.G. § 4B1.2(b)(1987). Two years later, the Sentencing Commission amended the definition, and omitted cross-references to the CSA. See U.S.S.G. § 4B1.2(b)(1989). This amendment indicates that the Sentencing Commission intended specifically to indicate that courts should not rely on the CSA's definitions of controlled substances when applying U.S.S.G. § 4B1.2(b). See U.S.S.G. § 4B1.2(b)(1989). On the other hand, the Supreme Court's suggestion that "[w]hen it comes to federal criminal laws . . . there is a consideration in addition to the desirability of uniformity in application which supports the general principle," Jerome v. United States, 318 U.S. 101, 104 (1943), counsels in favor of applying the CSA definition here.

Analyzing Tenth Circuit precedent, the Court concludes that the Tenth Circuit would likely apply the CSA definition of marijuana in this context. See United States v. Madkins, 866 F.3d at 1144; United States v. McKibbon, 878 F.3d at 972. Although the Tenth Circuit has not applied yet the CSA's definitions of specific controlled substances when analyzing controlled substance offenses under U.S.S.G. § 4B1.2(b), it has used the CSA's definition of delivery when applying U.S.S.G. § 4B1.2(b). See United States v. Madkins, 866 F.3d at 1144; United States v. McKibbon, 878 F.3d at 972. The Court, therefore, will apply the CSA's definition of marijuana in this case. See United States v. Madkins, 866 F.3d at 1144; United States v. McKibbon, 878 F.3d at 972.

The CSA criminalized industrial hemp until Congress enacted the Agriculture Improvement Act of 2018, Pub L. No. 115-334 ("AIA").  See State Industrial Hemp Statutes, Nat'l Conference of State Legislatures (April 16, 2020), https://www.ncsl.org/research/agriculture-and-rural-development/state-industrial-hemp-statutes.aspx (explaining that the AIA "changed federal policy regarding hemp, including the removal of hemp from the" CSA, and made hemp "an agricultural product")("State Industrial Hemp Statutes").  Johnson committed the marijuana offense at issue on May 30, 2012, and was sentenced on October 10, 2013.  See PSR ¶ 30, at 6-7.  At the time of the offense and sentencing, therefore, the CSA criminalized hemp, while today, the CSA does not criminalize hemp.  See State Industrial Hemp Statutes.  See also Robert Mikos, New Congressional Farm Bill Legalizes Some Marijuana, Marijuana Law, Policy, and Authority Blog (Dec. 13, 2018), https://my.vanderbilt.edu/marijuanalaw/2018/12/new-congressional-farm-bill-legalizes-some-marijuana/ (explaining that, although the AIA removes hemp from the CSA, it still "subjects hemp to regulations' and "empowers states to assume primary responsibility for regulating hemp").  The CSA version effective at the time of Johnson's marijuana offense and conviction -- from April 15, 2009, to December 17, 2014 -- defines "marijuana" as

> all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.  Such term does not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16) (effective April 15, 2009 to December 17, 2014).

The present definition of marijuana under the CSA is:

> Subject to subparagraph (B), the term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin

extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.

**(B)**   The term "marihuana" does not include --

(i)   hemp, as defined in section 1639*o* of Title 7;[9] or

(ii)   the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination.

21 U.S.C. § 802(16).

The Michigan statute under which Johnson was convicted has changed several times in the past decade.  See Mich. Comp. Laws Ann. § 333.7106(4); Mich. Comp. Laws Ann. § 333.7106 (effective until March 28, 2019); Mich. Comp. Laws Ann. § 333.7106 (effective until January 14, 2015). Before January 15, 2015, Michigan defined "marihuana" as

all parts of the plant Canabis [sic] sativa L., growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin.  It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted therefrom, fiber, oil or cake, or the sterilized seed of the plant which is incapable of germination.

Mich. Comp. Laws Ann. § 333.7106 (effective until January 14, 2015).  Michigan has since amended marijuana's definition twice.[10]  The current definition is:

"Marihuana" means all parts of the plant *Cannabis sativa* L., growing or not; the seeds of that plant; the resin extracted from any part of that plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin. Marihuana does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks, except the resin extracted from those stalks, fiber, oil, or cake, or any

---

[9]Hemp is defined as

plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

7 U.S.C. § 1639*o*(1).

[10]From January 15, 2015, to March 27, 2019, Michigan's marijuana definition excluded industrial hemp grown only for research purposes.  Since March 28, 2019, Michigan's marijuana definition excludes all industrial hemp. See Mich. Comp. Laws Ann. § 333.7106(4); Mich. Comp. Laws Ann. § 333.7106 (effective until March 28, 2019); Mich. Comp. Laws Ann. § 333.7106 (effective until January 14, 2015).

sterilized seed of the plant that is incapable of germination. Marihuana does not include industrial hemp.[11]

Mich. Comp. Laws Ann. § 333.7106(4)(effective March 28, 2019)(emphasis in original).

Johnson, relying upon United States v. Cantu, argues that this marijuana conviction, see PSR ¶ 30, at 6-7, cannot be a predicate offense for his career offender designation, because Michigan's marijuana definition at the time of Johnson's conviction is broader than the present CSA marijuana definition, see Objections at 8. Johnson, therefore, asks the Court to compare the state law at the time of Johnson's conviction -- 2013 -- with the current federal law. The United States, by contrast, argues that the Court should compare the state statute at the time of Johnson's conviction with the federal statute at the time of Johnson's conviction. See Sentencing Memo at 13.

In United States v. Cantu, the Honorable Harris L. Hartz, United States Circuit Judge for the Tenth Circuit, authored an opinion that vacated a defendant's sentence, because "the enhancement" under the ACCA, U.S.C. § 924(e)(1), "was plainly contrary to the law of this circuit." 946 F.3d at 926. The defendant in United States v. Cantu had two state drug convictions for distributing methamphetamine. See 946 F.3d at 926. Judge Hartz explains that "there are multiple means by which" the state drug statute under which the defendant was convicted "can be violated, and some of those means do not satisfy the ACC definition of *serious drug offense*." United States v. Cantu, 946 F.3d at 926 (emphasis in original). He notes that, in the Tenth Circuit, "[t]o determine whether a state conviction was for a serious drug offense, we generally begin with the categorical approach." United States v. Cantu, 946 F.3d at 926. Judge Hartz described the categorical approach as follows:

_____

[11]Under the Michigan statute:

"Industrial hemp" means the plant *Cannabis sativa* L. and any part of that plant, including the viable seeds of that plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9-tetrahydrocannabinol concentration of not more than 0.3% on a dry weight basis. Industrial hemp includes industrial hemp commodities and products and topical or ingestible animal and consumer products derived from the plant *Cannabis sativa* L. with a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry weight basis.

Mich. Comp. Laws § 333.7106(2).

- 41 -

First, the court looks only to the elements of the state offense. The particular facts of the defendant's prior offense are irrelevant. All that counts is what the defendant had to do to be guilty of the offense. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Second, it is not enough that there is an overlap between the elements of the state offense and the definition of *serious drug offense*. It is necessary that essentially any conduct that satisfies the elements of the state offense also satisfy the definition of *serious drug offense*. If one can commit the state offense by conduct that is not a serious drug offense, then conviction of the state offense cannot be a predicate offense for the ACCA. *See id.*

United States v. Cantu, 946 F.3d at 927 (emphasis in original). By contrast, Judge Hartz explains that, where "the alternatives (say, each controlled substance) in a statute define distinct criminal offenses," the statute is divisible and that the modified categorical approach applies. United States v. Cantu, 946 F.3d at 927 (citing Mathis v. United States, 136 S. Ct. at 2249).

Judge Hartz also files a concurring opinion in his own opinion for the entire panel, writing separately to describe a tension within the Tenth Circuit, noting that it "has been inconsistent about whether we apply the categorical approach based on the version of the state statutory offense in effect at the time of commission of the offense or at the time of conviction." United States v. Cantu, 946 F.3d at 936 (Hartz, J., concurring). Judge Hartz suggests that "the comparison that must be made is between what the defendant could have been convicted of at the time of the commission of the predicate state offense and what constitutes a federal drug offense at the time of the federal offense." United States v. Cantu, 946 F.3d at 936 (Hartz, J., concurring). Judge Hartz explains that "the opinion does not address these possibilities, because there is no dispute that at all relevant times" the state law at issue "included three substances as controlled dangerous substances which were not controlled substances under federal law." United States v. Cantu, 946 F.3d at 937 (Hartz, J., concurring).

Here, unlike in United States v. Cantu, both the state and federal laws at issue have changed since Johnson's offense and conviction. See United States v. Cantu, 946 F.3d at 926. Compare 21 U.S.C. § 802(16); § 333.7106(4) (effective March 28, 2019); with 21 U.S.C. § 802(16) (effective April 15, 2009 to December 17, 2014); § 333.7106 (effective until January 14, 2015). Between the time of the commission of the offense -- May 23, 2012 -- and Johnson's conviction -- October 10, 2013 -- neither the CSA nor Mich. Comp. Laws Ann. § 333.7106 changed, in contrast to the statute in United States v. Cantu. See 946 F.3d at 926-27. Judge Hartz's concern, therefore, that the Tenth Circuit "has been inconsistent about whether we apply the categorical approach based on the version of the state statutory offense in effect at the time of commission of the offense

- 42 -

or at the time of conviction" does not apply in this case, because the laws at issue here were the same at the time Johnson committed the offense and at the time he was convicted.   United States v. Cantu, 946 F.3d at 936 (Hartz, J., concurring).

Moreover, the Court sees no logical reason to compare the Michigan law at the time of Johnson's conviction with the current federal law, as Johnson suggests.  See Objections at 8. Johnson relies upon United States v. Bautista, 982 F.3d 563 (9th Cir. 2020), for the proposition that "the Guidelines require the sentencing court to decide whether a prior offense qualifies as a 'controlled substance offense' at the time of sentencing."  Second Supp. Authority at 2.  There, the Ninth Circuit concludes that, "[a]t federal sentencing, the district judge was required to compare the elements of the state crime as they existed when Bautista was convicted of that offense to those of the crime as defined in federal law at the time of federal sentencing -- that is, after the" AIA amended the CSA's marijuana definition.   United States v. Bautista, 982 F.3d at 569.  The Ninth Circuit cites no authority to support directly this assertion.  See United States v. Bautista, 982 F.3d at 569.  The Ninth Circuit also does not explain clearly why the district court should have compared the past state statute with the current federal statute.  See United States v. Bautista, 982 F.3d at 569.  It merely cites U.S.S.G. § 4B1.1 and  U.S.S.G. § 4B1.2, and concludes that "the text of the Guidelines makes clear that the issue at sentencing is the nature of the prior state-law crime under federal law at the time of sentencing rather than at the time of conviction."   United States v. Bautista, 982 F.3d at 569.  Next, the Ninth Circuit indicates that, because the present federal marijuana definition excludes hemp, but the state law at issue "did not, the latter crime's 'greater breadth is evident from its text.'"   United States v. Bautista, 982 F.3d at 569 (quoting Vidal, 504 F.3d at 1082).  Accordingly, the Ninth Circuit concludes that the district court "erred in applying the recidivist sentencing enhancement for a controlled substance," because the defendant's conviction "is facially overbroad and not a categorical match for a 'controlled substance offense.'" United States v. Bautista, 982 F.3d at 569 (no citation for quotation).  The Court does not find United States v. Bautista persuasive; the Ninth Circuit's analysis is conclusory.  See 982 F.3d at 569.  Moreover, the Court does not agree that the U.S.S.G.'s text makes clear which iteration of the statutes at issue the Court should consider.  See U.S.S.G. § 4B1.1; U.S.S.G. § 4B1.2; United States v. Bautista, 982 F.3d at 569.  Neither U.S.S.G. § 4B1.1 nor  U.S.S.G. § 4B1.2 discusses

directly this issue.  See U.S.S.G. § 4B1.1;  U.S.S.G. § 4B1.2.  The Court, therefore, declines to rely on United States v. Bautista when deciding this issue.  See 982 F.3d at 569.

Further, Johnson's case does not present an ex post facto clause issue, because the statutes at issue do not affect Johnson negatively when applied retroactively.  See 21 U.S.C. § 802(16); Mich. Comp. Laws Ann. § 333.7106(4) (effective March 28, 2019).  The Constitution decrees that "[n]o Bill of Attainder or ex post facto Law shall be passed."  Const. Art. I, § 9, cl. 3.  In the U.S.S.G. context, although courts generally apply the sentencing guidelines in effect on the day of sentencing, see U.S.S.G. § 1B1.11(a), "if retroactive application of an amended sentencing guideline is to a defendant's disadvantage, then such application violates the ex post facto clause," United States v. Miller, 38 F. App'x 517, 519 (10th Cir. 2002).  See Peugh v. United States, 569 U.S. 530, 544-45 (2013)(holding that courts violate the ex post facto clause when a change to the Guidelines adopted after the defendant committed the offense at issue results in an increased sentencing range).  U.S.S.G. § 1B1.11(b) instructs: "If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the **ex post facto** clause . . . the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed."  (bold in original)  The Guidelines do not specify, however, which version of relevant controlled substance offense statutes courts should apply.  See U.S.S.G. § 1B1.11(b).  The Court applies the Tenth Circuit's test related to the Guidelines and asks whether retroactive application of the amended statutes would disadvantage Johnson.  See United States v. Miller, 38 F. App'x at 519.  Whether the Court analyzes the present versions of the Michigan statute and the CSA, or the versions at the time Johnson was convicted, the result is the same.  See 21 U.S.C. § 802(16); Mich. Comp. Laws Ann. § 333.7106(4) (effective March 28, 2019).  The statutes were a categorical match in 2013, and, as a result of subsequent amendments, they are categorical match today.  See 21 U.S.C. § 802(16); Mich. Comp. Laws Ann. § 333.7106(4) (effective March 28, 2019).  Consequently, Johnson is at no risk of disadvantage from retroactive application.  See United States v. Miller, 38 F. App'x at 519.  Accordingly, the Court concludes that this issue does not implicate the ex post facto clause.  See Peugh v. United States, 569 U.S. at 544-45.

The Court, therefore, compares the versions of the Michigan statute and the CSA at the time of Johnson's offense and conviction.  See U.S.C. § 802(16) (effective April 15, 2009 to

December 17, 2014); Mich. Comp. Laws Ann. § 333.7106 (effective until January 14, 2015).  The

statutes are virtually identical -- a categorical match.  See U.S.C. § 802(16) (effective April 15,

2009 to December 17, 2014); Mich. Comp. Laws Ann. § 333.7106 (effective until January 14,

2015).  See also Descamps v. United States, 570 U.S. at 257 (explaining that a "categorical match"

exists between a state and federal statute where the "state statute's elements" are not "broader than

the federal analogue").  Next, the Court compares the present version of the Michigan statute with

the present version of the CSA.  See 21 U.S.C. § 802(16); Mich. Comp. Laws Ann. § 333.7106(4)

(effective March 28, 2019).  The key distinction between the present Michigan statute and the CSA

is that the CSA excludes "the plant Cannabis sativa L. and any part of that plant, including the

seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers,

whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3

percent on a dry weight basis," while the Michigan statute excludes "industrial hemp."  Michigan's

current industrial hemp definition, however, mirrors the current federal hemp definition.  See 21

U.S.C. § 802(16); Mich. Comp. Laws Ann. § 333.7106(4) (effective March 28, 2019).  Regardless

of whether the Court compares the present statutes or the past statutes, therefore, Michigan's

marijuana definition matches categorically the federal definition.  See 21 U.S.C. § 802(16); Mich.

Comp. Laws Ann. § 333.7106(4) (effective March 28, 2019).

     **IT IS ORDERED** that: (i) the Defendant's Objections to the Presentence Investigation

Report, filed August 3, 2020 (Doc. 108), are overruled; and (ii) Johnson is sentenced to a term of

# months.

                                          _____

                                          UNITED STATES DISTRICT JUDGE

*Counsel*:

John C. Anderson
  United States Attorney
Mark Christian Pfizenmayer
  Assistant United States Attorney
United States Attorney's Office

- 45 -

Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Stephen P. McCue
  Federal Public Defender
Hans Erickson
   Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

     *Attorneys for the Defendant*